DAVID SAMUEL WARREN *vs.* HARLAN AND HOLLINGSWORTH CORPORATION, a corporation of the State of Delaware.

1.   WITNESSES—EXAMINATION—QUESTION AND ANSWER.

In an employee's action for injuries from a steam hammer operated by a hammer boy, by whose negligence plaintiff charged that he was injured, a question asked plaintiff on direct examination as to what he knew about the hammer boy was too broad, and his answer that he did not know anything was struck out as immaterial.

2.   TRIAL—PROVINCE OF JURY—WITNESSES.

The jury are the sole judges of the credibility of witnesses and of the weight of their testimony.

3.   MASTER AND SERVANT—INJURIES TO SERVANT—ACTIONS—VARIANCE.

In an employee's action for injuries, the plaintiff can recover only on proof by a preponderance of the evidence that his injury was caused from such negligence of the defendant as is described in the declaration.

4.   MASTER AND SERVANT—INJURIES TO SERVANT—ACTIONS—PRESUMPTION—BURDEN OF PROOF.

In an employee's action for injuries, there is no presumption of negligence on the part of the defendant or plaintiff from the mere fact of injury, but the burden of proving negligence is on him who charges it.

5.   NEGLIGENCE—DEFINITION.

"Negligence" is a failure to observe, for the protection of another, that degree of care which the circumstances justly demand.

Syllabus.

6. MASTER AND SERVANT—INJURIES TO SERVANT—LIABILITY OF MASTER.

An employee's right to recover for injuries is based upon the violation of some duty which the employer, or one for whose conduct the employer is responsible, owed to the employee.

7. MASTER AND SERVANT—INJURIES TO SERVANT—FELLOW SERVANTS.

A blacksmith's helper and a hammer boy, engaged in a common employment in a blacksmith shop, were fellow servants.

8. MASTER AND SERVANT—INJURIES TO SERVANT—FELLOW SERVANTS— LIABILITY OF MASTER.

An employee cannot recover from his employer for injuries caused by the negligence of a fellow servant, in the selection and retention of whom the employer has used due and reasonable diligence.

9. MASTER AND SERVANT—INJURIES TO SERVANT—FELLOW SERVANTS— SELECTION AND RETENTION.

An employer owes to each employee the duty to exercise such care as is reasonable, having regard to the particular business, to select and retain co-employees reasonably competent and careful.

10. MASTER AND SERVANT—INJURIES TO SERVANT—ASSUMPTION OF RISK—FELLOW SERVANTS—NOTICE OF INCOMPETENCY.

An employee may assume that his co-employees are not incompetent or careless, until he is chargeable with knowledge that they are otherwise.

11. MASTER AND SERVANT—INJURIES TO SERVANT—ASSUMPTION OF RISK— FELLOW SERVANTS—NOTICE OF INCOMPETENCY.

Whether an employee is chargeable with knowledge of the general reputation of his co-employee for incompetency or carelessness depends upon all the circumstances of the particular case.

12. MASTER AND SERVANT—INJURIES TO SERVANT—ASSUMPTION OF RISK— FELLOW SERVANTS.

An employee assumes the usual risks of the employment, excluding negligence of the employer, but including pure negligence of the co-employee, whenever doing anything contemplated by his employment contract.

13. MASTER AND SERVANT—INJURIES TO SERVANT—LIABILITY OF MASTER.

An employer is not an insurer of the safety of his employee, or an insurer against the negligence of co-employees in whose selection and retention he has exercised a care proportioned to the hazards of the particular service.

14. MASTER AND SERVANT—INJURIES TO SERVANT—FELLOW SERVANTS— LIABILITY OF MASTER.

An employer is liable for the negligence of a careless and incompetent fellow servant in whose selection and retention he has not exercised reasonable diligence, if the injured co-employee used ordinary care and prudence to avoid the injury.

15. MASTER AND SERVANT—INJURIES TO SERVANT—FELLOW SERVANTS— "COMPETENT SERVANT".

A "competent servant" is one reasonably safe for the performance of the duties assigned to him, considering the nature of the work and the safety of his co-employees.

16. MASTER AND SERVANT—INJURIES TO SERVANT—FELLOW SERVANTS—
"INCOMPETENCY".

"Incompetency" in a servant may exist in the disposition with which he performs his duties, although he is physically and mentally able to do all work required of him.

17. MASTER AND SERVANT—INJURIES TO SERVAN1—FELLOW SERVANTS—
LIABILITY OF MASTER.

An employer is not liable for injury to an employee from a mere temporary lapse of a co-employee, who has previously performed his duties in a reasonably safe and careful manner.

18. MASTER AND SERVANT—INJURIES TO SERVANT—FELLOW SERVANTS—
INCOMPETENCY—KNOWLEDGE OF MASTER—EVIDENCE.

While, in an employee's action for injuries, proof of a co-employee's reputation for incompetency and carelessness may be sufficient to charge an employer with knowledge thereof, such reputation must be established by proof of facts and acts sufficient to show that the co-employee was careless and unfit for the duties assigned to him.

19. MASTER AND SERVANT—INJURIES TO SERVANT—FELLOW SERVANTS—
COMPETENCY—KNOWLEDGE OF MASTER—PRESUMPTIONS.

An employer is presumed to have known, concerning his employee's reputation, that which is generally known to those among whom the employee has worked or lived, and is presumed to have known what he might have known by due care and diligence.

20. MASTER AND SERVANT—INJURIES TO SERVANT—FELLOW SERVANTS—
INCOMPETENCY—KNOWLEDGE OF MASTER—EVIDENCE.

In an employee's action for injuries through the act of a co-employee, evidence of reputation and carelessness of the co-employee, not connected with the duties assigned to him, and unconnected with any specific acts of prior negligence as to such duties, is not sufficient to show that he was careless or unfit for such duties, and that the employer should have known it.

21. MASTER AND SERVANT—INJURIES TO SERVANT—RULES.

An employer should promulgate proper rules for his employees and business whenever his personal supervision is impracticable.

22. MASTER AND SERVANT—INJURIES TO SERVANT—RULES—SUFFICIENCY.

That rules promulgated for employees have been in force for a long time, and have accomplished the purpose intended, is evidence of their sufficiency.

23. MASTER AND SERVANT—INJURIES TO SERVANT—WARNING—SUFFI-
CIENCY.

The instruction or warning required to be given an employee depends upon the circumstances of each case.

24. MASTER AND SERVANT—INJURIES TO SERVANT—FELLOW SERVANTS.

In a suit against an employer for injury to an employee from a steam hammer operated by a fellow servant, the plaintiff cannot recover unless the fellow servant was a careless and unfit person to operate a hammer and the accident was caused by the negligent act of such fellow servant.

25. MASTER AND SERVANT—INJURIES TO SERVANT—CONTRIBUTORY NEG-
LIGENCE.

An employee must use ordinary care, prudence, and diligence, in proportion to the dangers, to avoid accident.

Evidence.

26.  TRIAL—JURY—DELIBERATION—EVIDENCE.

Where the evidence is conflicting, the jury should reconcile conflicts, if possible, and, if not, they should give credit to the evidence of those witnesses which they believe most worthy of belief, taking into consideration the character of the witnesses, their means of knowing the facts about which they have testified, their fairness, intelligence, and interest, and all circumstances proper to consider.

27.  DAMAGES—PERSONAL INJURIES—MEASURE.

The measure of an injured enployee's recovery should be such as will reasonably compensate him for his injuries, including his loss of time and wages, his past and future pain and suffering, and also for his permanent injuries and loss of ability to earn a living in the future.

(*March* 19,1912.)

Judges BOYCE and CONRAD sitting.

*Levin Irving Handy* and *Wilbur L. Adams* for plaintiff.

*Reuben Satterthwaite, Jr.*, for defendant.

Superior Court, New Castle County, March Term, 1912.

ACTION ON THE CASE (No. 37, November Term, 1910) to recover damages for personal injuries to the plaintiff.

At the trial, the plaintiff testified concerning the accident, in substance, as follows:

I am twenty-three years of age; will be twenty-four the thirtieth of the coming May. On the twenty-fifth of February, 1910, I was employed by the Harlan and Hollingsworth Corporation in the blacksmith shop as a blacksmith's helper. My employment there dated from sometime in November, 1909. Samuel Truitt was the blacksmith; I was helping. We were making what they call a form or yoke out of iron. In making that they use several different kinds of tools, among them a steam hammer. I do not know the name of the hammer, but it was an upright hammer, and about twelve feet high. It struck a heavy blow. The hammer had, I judge, about a three-foot drop. My work was to put the form up on the lower die of the steam hammer when I was told. And I had to clean the scales out of the form. The hammer boy, (the one who started the hammer in motion and stopped it) was Joseph Tomlinson; so that the crew working together on that steam hammer, on that job, was Mr. Truitt the blacksmith, myself, the helper, and Joseph Tomlinson, the hammer boy.

At the time of the accident, to the best of my knowledge, I do not think I had worked on that hammer and with that crew over two weeks. Previous to that I had been working down at the other end of the shop, I judge about a hundred feet away.

(The witness was here asked, "What did you know about Joseph Tomlinson? A. Well, I did not know anything." This was objected to by counsel for defendant, as too broad and motion made to strike out the answer as immaterial.)

BOYCE, J.:—We sustain the objection and order the answer stricken out.

I could not say how long I had known Joseph Tomlinson. I just knew him when I saw him around the shop; was not personally acquainted with him. I did not know anything whatever about his work as a hammer boy.

The accident happened in the morning of the twenty-fifth of February, 1910. It was about the first thing in the morning. I cannot recall the hour, but I knew it was early in the morning. I cannot say which heat it was. It might have been between eight and nine o'clock in the morning. I don't know. I am supposed to be there at seven o'clock. In my position as blacksmith's helper it was my duty to take orders from the blacksmith, Samuel Truitt, and my foreman, Mike Viegofski. The foreman did not give me any orders that morning. The blacksmith ordered me to clean the scales out of the die or form which was on the bottom die of the steam hammer, and told me to hurry up about it. The hammer was up at the time and I am positive there was nobody at the hammer when I went to it. The scales were in the hole in the top of the form. When Mr. Truitt told me to clean those scales out of the form and hurry up about it, that the heat was ready to come out, I stooped down and grabbed a piece of waste or rag and I started to knock the scales out. Then my hand got smashed with the steam hammer. The hammer came down on it. I did not know that Tomlinson, the hammer boy, had come to the steam hammer. When they push the motion lever it starts the motion of the hammer running up and down. If the hammer was up, and if you pulled the motion lever, and it had steam on it, the hammer would come down in a hurry. But if the hammer was

down and you moved the motion lever with the steam on, it would raise the hammer up. The hammer man at his post, if he tries to see, can observe whether the hammer is up or down. In the position I was at the time of the accident, the hammer man from his position could have seen me if he had looked. The hammer man was supposed to move the hammer by the use of the motion lever, attend to it and run the water out of it the first thing in the morning, without telling, and oil the hammer; and after that he was supposed to run his hammer when he was told. The blacksmith, Mr. Truitt, would tell the boy at the hammer to raise the hammer, hit it light or heavy, whatever he would want him to do. At the time of this accident the "heat" was in the fire, not on the form or die.

The morning of the accident after the blacksmith told me to remove the scales from the form and before the accident happened, I heard him holler something to the hammer boy but I cannot say whether it was the word "right" or not, but he gave him the signal. I cannot say that I know what that signal was for. I did not see Tomlinson at the time the signal was given and I do not know where he was. I had no warning whatever that the hammer was about to be moved and fall on my hand. The hammer came down on my hand and crushed it. I took my other hand, lifted it up and pulled it out. I did not have the strength in the crushed hand to lift it up and I took this other hand and lifted it out. I remember them taking me to the store room. I cannot say after that; it seemed like I cannot tell; cannot recall. I remember getting in the ambulance, and after that I don't remember which way I went. At the time I did not know where I had gone. I subsequently found myself at the Delaware Hospital. My arm was amputated on the eighth day of March, 1910. The pain was so great I thought I was dying all the time. I did not see how I could stand it. I thought I was going to die any minute. I did not remember much about that though, until after my hand was amputated and then I remembered what happened to my arm. I was in the hospital one month lacking one day. I had to go back to the hospital several times. Some bones were mashed so fine that they did not get them all out and they

cut it again and took them all out. When I was first discharged at the end of the month the wound was not healed at the time. After I was discharged I had to go back to the Delaware Hospital twice a week for a long time.

At the time of the accident I was getting twelve dollars and seventy-five cents a week. Previous to the accident my average weekly earnings I would say were fourteen or fifteen dollars a week. This was what I earned previous to the time that I went to Harlan's. I have made more than that. After the accident I got employment again at Harlan's in the storeroom. They started me at eight dollars and fifty-four cents a week. They promised me more but did not give it to me, and in June of 1910 I left or got fired. I was there only a month or two after the accident. It was nearly a year after leaving there before I got anything at all to do. I am working now at the Wilmington Gas Company and am a gas arc light trimmer. I am making ten dollars a week. I have not been able to make more than ten dollars a week since this accident.

BOYCE, J., charging the jury:

Gentlemen of the jury:—We decline to instruct you to find for the defendant.

This action was brought by the plaintiff, David Samuel Warren, against the defendant, Harlan and Hollingsworth Corporation, to recover damages for personal injuries to the plaintiff, alleged to have been occasioned by the negligence of the defendant corporation, at the shops of the defendant corporation, in this city on the twenty-fifth day of February, A. D. 1910.

The plaintiff's declaration contains a single count and, in general language, the negligence charged is that the defendant negligently and carelessly omitted to provide a reasonably careful and competent fellow servant to operate a certain steam hammer around which the plaintiff was working as a helper to a certain blacksmith in the shops of the defendant, in making iron bolster hangers to be used as parts of car trucks; and it is contended that by reason of the incompetency of his co-worker to operate the said machine, he, the plaintiff, was injured.

The defendant denies that it was guilty of the negligence charged, and insists that the injury complained of was caused by the negligence of the plaintiff himself.

[2] We shall not attempt a statement of the testimony which has been produced before you. You have patiently and attentively listened to the several witnesses as they have given their testimony, and you doubtless have it clearly in your minds. We are not permitted to charge you on the facts adduced by the witnesses. You are the sole judges of the credibility of the witnesses and of the weight and value of their testimony. The evidence is, therefore, for your exclusive consideration and determination, after applying thereto the law as we are about to declare to you.

[3, 4] This action is based upon the alleged negligence of the defendant, and to entitle the plaintiff to recover you must be satisfied by the preponderance or greater weight of the evidence that the alleged negligence of the defendant, which, it is claimed, caused the plaintiff's injuries, was such negligence as is described in the plaintiff's declaration; that is, "that the said Tomlinson was not a reasonably competent and careful person to operate said steam hammer and to control said motion levers, and the said Tomlinson was known to the defendant, or by the use of due diligence might have been known to the defendant, to be a person who did not possess the skill, care and prudence necessary to operate said steam hammer and use said motion levers with safety, but the said defendant, nevertheless, negligently and carelessly employed the said Tomlinson to work and operate said steam hammer and to control the said motion levers of the same." Such negligence must be proved, and the burden of proving it to the satisfaction of the jury, as alleged, rests upon the plaintiff.

There is no presumption of negligence, either on the part of the defendant, or the plaintiff, from the mere fact that the plaintiff was injured. Whether there was any negligence at the time of the accident, and whose, you must determine from all the facts and circumstances of this case as disclosed to you by the testimony of the witnesses.

[5] Negligence has been defined to be a failure to observe,

for the protection of the interests of another person, that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury.

It is conceded that the injuries complained of were inflicted by the hammer being let down on the right hand and forearm of the plaintiff when his said hand was in the pocket or hole in the mould resting on the base or lower die of the hammer machine, and that as a result of the injury the arm had subsequently to be amputated below the elbow.

[6]  The ground upon which an employee may recover from his employer for personal injuries inflicted in the latter's service is that such injuries were caused by the violation or neglect of some duty which the employer owed his employee—that is, the right of recovery for such injuries is based upon the negligence of the employer, or the negligence of another for whose conduct the employer is responsible.  And the burden of proving such negligence is on the plaintiff.

[7, 8]  It is conceded that the plaintiff and Tomlinson, the hammer man, were, at the time of the accident, employed by the defendant and engaged in a common employment.  They, therefore, bore the relation of fellow servants or co-workers.  It is the settled law in this state that there can be no recovery from the employer for personal injuries caused by the negligence of a fellow servant, in the selection and retention of whom the employer has used due and reasonable diligence.

[9]  It is, therefore, the duty of the employer to exercise reasonable care in the selection and retention of his employees, to the end that fellow servants or co-employees may not be endangered in the performance of their duties by the conduct of other employees of the defendant who are unskilful or careless in the performance of their duty.  The employer is required to employ and retain in his service co-workers and fellow servants reasonably competent and careful for the performance of the particular work in which they are engaged.

The degree of care thus required of the employer in the selection and retention of his employees is proportioned to the risk or hazard of the particular business in which the employee is engaged.

[10, 11]   An employee is entitled to assume that his employer has exercised due care and diligence in the selection and retention of reasonably competent and careful co-employees, and is not chargeable with knowledge of the incompetency or carelessness of his co-employees until he has notice thereof by information or circumstances reasonably sufficient for that purpose.   Whether an employee is chargeable with knowledge of the general reputation of his co-employee for incompetency or carelessness will depend upon the length of time he has known, or had an opportunity of knowing, the reputation of his co-employee, and upon all the circumstances of the particular case.   *Giordano v. Brandywine Granite Co.*, 3 *Penn.* 423, 52 *Atl.* 332, and *Murphy v. Hughes, et al.*, 1 *Penn.* 260, 40 *Atl.* 187.

[12]   A person entering into the employment of another assumes the usual risks of the employment, excluding that of the negligence of the employer, and including that of the pure negligence of the co-employee, whenever doing anything contemplated by his contract of employment.   *Taylor v. Bush and Sons*, 6 *Penn.* 307, 66 *Atl.* 884, 12 *L. R. A.* (*N. S.*) 853.

[13]   If the employer has exercised due and reasonable care in the selection and retention of reasonably careful and competent employees, he is not an insurer of the safety or against the negligence of such employees.   Reasonable care means that degree of precaution and diligence which the risks and hazards of the particular service reasonably require.

[14]   We now especially direct your attention to the distinction to be made between the negligence of a competent fellow servant and the negligence of an incompetent fellow servant.   The employer is not liable for the negligence of a competent fellow servant, but he is liable for the negligence of a careless and incompetent fellow servant, in the selection and retention of whom he has not exercised due and reasonable diligence, if it be shown at the same time that the injured co-employee used ordinary care and prudence to avoid the injury.

The plaintiff insists that the defendant was negligent in failing to provide a reasonably competent and careful person to operate the said steam hammer at the time of the accident.   Was

Tomlinson, the hammer man, competent or incompetent to oper-
ate the steam hammer at the time of the accident? If you find
from the preponderance or greater weight of the evidence that he
was reasonably competent for the performance of the duties to
which he had been assigned, your investigation of this case should
stop there, and you should return a verdict for the defendant.

If you should find that Tomlinson was not reasonably compe-
tent for the work assigned to him, had the defendant reason to
know it? If the defendant had reason to know that Tomlinson
was incompetent, and if knowing it, or by the exercise of due care
and caution could have known it, and continued him in its employ-
ment, and if the plaintiff was injured by reason of such incompe-
tency, without the fault or negligence of the plaintiff operating at
the time, the plaintiff would be entitled to recover. If the defend-
ant had not reason to know that Tomlinson was not reasonably
competent to perform the duties assigned to him, or, as we have
said, if the injury to the plaintiff did not arise from his co-em-
ployee's incompetency, the plaintiff cannot recover.

[15, 16] By a competent servant is meant a servant rea-
sonably safe for the performance of the duties assigned to him,
considering the nature of the work and the general safety of those
engaged with him in a common employment. Incompetency may
exist in the disposition with which a servant performs his duties.
Although he may be physically and mentally able to do all that
is required of him, his disposition toward his work, and toward
the general safety of the work of his employer and of his fellow
servants, may, or may not, tend to make him an incompetent
servant, according to the facts and circumstances of the particular
case. *Labatt on Master and Servant*, § 134.

[17] · If it should be found from the evidence that Tomlin-
son was not careless or incompetent in the actual performance of
his duties, as alleged, but that he had always, prior to the acci-
dent by which the plaintiff was injured, performed his duty as a
hammer man in a reasonably safe and careful manner, the plaintiff
would not be entitled to recover, or, if it should appear from the
evidence that Tomlinson had been negligenct only in respect to
the particular act which caused the injury to the plaintiff, the
latter cannot recover.

Charge.

The question whether the particular act which caused the injury to the plaintiff was negligent, and if negligent, whether it was merely a temporary lapse, or indicated an unfitness on the part of Tomlinson for the duties assigned to him, you should determine from all the evidence adduced before you.

[18]   Proof of the commission of an act by a co-worker by which a fellow servant is injured, satisfactory to the jury, accompanied by like proof that the person charged with the act had a general reputation, among those with whom he worked, for carelessness and incompetency in the performance of his duties, based upon facts and acts, shown to the jury, sufficient in their character to satisfy the jury that the person charged with the act was a careless and unfit person to perform the duties assigned to him, would and should warrant the jury in finding that the person so charged was careless and unfit for the work, and that the particular act complained of was negligent; but such reputation should be based upon facts and acts, shown to the jury, sufficient in their character to satisfy the jury that the person charged with the act by which the plaintiff was injured was careless and unfit for the duties assigned to him.   If such reputation be shown to the satisfaction of the jury, it may be taken as evidence tending to show notice to the defendant of the careless and negligent character of the person charged with the alleged negligent act.

[19]   The degree of weight to be given such evidence in the proof of notice to the employer of the incompetency or negligence of such employee will depend upon the length of time such reputation existed prior to the accident, and other circumstances of the particular case; the general rule being that the employer is presumed to have known what was generally known to those among whom such co-employee worked or lived, and that the employer is presumed to have known what he might have known by the exercise of due care and diligence.   *Giordano v. Brandywine Granite Co.*, *supra*.

[20]   Evidence of reputation for carelessness, not connected with the performance of the duties assigned to Tomlinson, and unconnected with any specific acts of prior negligence with respect to the work to which he was assigned, is alone not sufficient to

13

show that he was so careless and unfit for such work that the defendant ought to have known it. And no weight should be given to evidence to the effect that Tomlinson frequently left the steam hammer and talked with others in the shop near by, between the preparations of "forges" or "heats" when his services were not required at the hammer, unless the jury are satisfied from a preponderance of the evidence that his habits in this respect showed such inattention to his duties as to render him unfit for the proper discharge of those duties.

If you should find from the evidence that Tomlinson was, in fact, a careless, unfit person to perform the duty assigned to him, and his incompetency had continued for such a length of time, before the accident which caused the injury to the plaintiff, that a careful and diligent supervision of the defendant's business ought to have brought it to light, the defendant would be chargeable with notice of its existence. And if you find he was negligent at the time of the accident, and it was his negligence which proximately caused the injury to the plaintiff, your verdict should be for the plaintiff.

[21, 22] It is the duty of the employer to make and promulgate proper rules for the government of his employees and business whenever it is so large or complicated as to make his personal supervision impracticable; whether such rules are sufficient for the purpose is for the determination of the jury from the evidence in the particular case. One of the tests of their sufficiency is that they have been in force for a long time and have accomplished the purpose intended. *Murphy v. Hughes Bros. & Bangs, supra.*

[23] The degree or measure of instruction or warning required to be given to an employee as to the dangers of his employment must depend upon the hazards and circumstances of each case.

[24] Before the jury can find for the plaintiff they must be satisfied, from the evidence, not only that Tomlinson was a careless and unfit person to operate the hammer, but that the accicent, whereby the plaintiff was injured, was caused by the negligent or careless act of Tomlinson.

[25] The plaintiff was bound to use ordinary care, prudence, and diligence to avoid the accident, and the care and caution he

was bound to use was in proportion to the danger to be avoided.

If the plaintiff, by his own negligence, proximately caused the accident, he cannot recover.

Counsel for the plaintiff admits that the alleged statements made by Truitt, the blacksmith, admitted without objection for the purpose of contradicting Truitt's testimony respecting the reputation of Tomlinson, do not bind the defendant, and must be considered by you only for the purpose of contradicting Truitt.

[26]   Where there is a conflict of testimony, the jury should reconcile it if they can, and if they cannot, they should weigh and estimate it, and give their verdict for that party in whose favor is found the greater weight or preponderance of the evidence.

In estimating the weight of the evidence the jury should consider the character of the witnesses, their means of knowledge of the facts of which they have testified, their fairness, their intelligence, their interest, and all other circumstances by which the value of their testimony may be properly determined.

[27]   If your verdict should be for the plaintiff, it should be for such a sum as in your judgment, from the evidence, will reasonably compensate him for his injuries, including his loss of time and wages, his pain and suffering in the past, and such as he may have in the future as the result of his injuries, and also for his permanent injuries and loss of ability to earn a living in the future. *Giordano v. Brandywine G. Co., supra.*

Verdict for plaintiff.