AMERICAN BRIDGE COMPANY, a corporation existing under the laws of the State of New Jersey, defendant below, plaintiff in error *vs*. FRANCESCO VALENTE, plaintiff below, defendant in error.

*Writ of Error—Fellow-Servants—Instruction and Warning—Rules—Safe Place—Nonsuit—Instructing Jury—Error —Reversal of Judgment.*

1.　If the facts that are necessary to determine whether co-employees are, or are not, fellow-servants are undisputed, then it is a question for the court to decide and not the jury.　Such has been the rule upon which the courts of this State have acted.

2.　If the injured servant and his deliquent co-employees were at the time of the accident employed by a common master, and engaged in a common employment, the relation of fellow-servants existed, unless the servant whose negligence caused the injury was at the time engaged in the performance of one of the primary duties of the master.

3.　What is a "common employment," does not depend upon the grade of the servant in the master's employment, nor the time he has been engaged in the service in which the injury happens.　*Held* that the members of a loading gang who were engaged in loading iron columns on a car and the plaintiff who was engaged in painting a column that had been already loaded, were fellow-servants.

4.　It is a general rule that a servant holds himself out as capable of doing the work he undertakes to do, and that he assumes the risks incident to the employment.　So far as he comprehends, or ought to comprehend them, he assumes such risks.

5.　The employment not being a difficult one and there being no hidden or latent danger, and any peril that may have existed being as obvious to the plaintiff and more so, than to the master, *held* that it was not necessary that the master should have given him instructions or warning.　Any negligence upon the part of fellow-servants, either in their failure to give him warning, or in their carelessness in loading the car, the plaintiff assumed.

6.　While it is the duty of the employer to make and promulgate rules when his business is so large and complicated as to make his personal supervision impossible, this does not mean that there should be rules governing every detail of the business.　*Held*, that it was not necessary that the defendant company should have promulgated rules respecting the work in which the plaintiff was engaged, such work being of a simple character, easily understood　and one of mere detail in the business of the company; and there being no evidence showing what kind of rules were required, that rules of any kind were necessary, or that the absence of rules was the cause of the plaintiff's injury.

7.  While the master is required to furnish and maintain a safe place of work he is not chargeable with failing to perform this duty, when the place furnished being safe in itself, is made unsafe solely by the negligent acts of fellow-servants in carrying out the details of the master's business.

8.  *Held,* that the Court below erred in refusing to instruct the jury to return a verdict in favor of the defendant, and judgment reversed.

(<em>May</em> 24, 1909.)

NICHOLSON, CH., LORE, C. J., and GRUBB and PENNEWILL, J. J., sitting.

*William S. Hilles* for plaintiff in error.

*Leonard E. Wales* for defendant in error.

Supreme Court, adjourned January Term, 1909.

WRIT OF ERROR to the Superior Court for New Castle County, No. 2 June Term, 1908.

PENNEWILL, J., delivering the opinion of the Court:

The defendant in error brought an action in the Court below to recover damages for personal injuries alleged to have been caused by the negligence of the plaintiff in error.

There is practically no dispute respecting the material facts in the case, and the following statement of the testimony is, we think, sufficient for a proper understanding of the questions raised and argued before this Court.

The American Bridge Company, the plaintiff in error, was at the time of the accident to the defendant in error, engaged in the operation of a plant near Edge Moor, in this State, for the manufacture of bridges and other articles made of structural steel and iron.  The plaintiff below was employed by the company as a laborer, at first in digging trenches, and a few days before the accident was engaged in rough painting in and about the shop.  A number of large columns, each weighing a ton or a

ton and a half, had been completed and were ready for loading upon a car. The columns thus completed were painted, except the parts thereof which rested upon the skids, and which could not be painted until the columns were moved.

The floor upon which the columns were resting was about level with the top of the sides of a gondola car into which they were to be loaded, the car itself running on tracks in a depression along the wall of the shop. In order to load the columns, two chain hoists, each running on movable pulleys near the roof of the shop, were employed. The hook connected with each of these two chains hoists was attached to the column where it lay upon the skids. It was then raised by means of the chain hoists to a height sufficient to enable the projections on the columns to pass over the side of the gondola car, and then with two or more men pushing on each end, the column thus suspended was pushed along the movable trolleys, and then loaded into the car. This work was performed by what was known as the "loading gang," which consisted of a foreman and four laborers, the loading being done under the shipping clerk.

One of the columns had been placed upon the gondola car, and the loading gang were about to place the second column on the car when Valente, the plaintiff, was instructed by the general foreman of the company by signs to go upon the car and with a large brush paint the small places on the first column where it had originally rested on the skids. He was doing this in a kneeling position, with his back turned towards the men who were loading the second column, and in plain view of, and was seen by the members of the loading gang. When the second column had been raised to a sufficient height, the loading gang, two men at each end, pushed the column on the movable trolleys to a position over the car in order that it might be lowered into place. In so doing, one end of the column struck the column in the car knocking it down, and thereby injuring Valente's foot which was caught and crushed between the first column and the floor, and so badly injured as to require amputation. The second column remained suspended in the hoists.

The plaintiff below could neither speak nor understand the English language. He was a member of a gang composed of Italians who worked under the directions of an Italian boss. He had been so working for about a month and a half prior to his injury, but had not done any painting on iron columns. The company being short of men ordered this Italian boss to send some of his laborers to do some painting, and the plaintiff below was one of the men sent for the purpose. He received no instructions other than by signs from the foreman, and no warning was given him of any danger connected with the work.

Upon the conclusion of the testimony on both sides the Court was asked to instruct the jury to return a verdict in favor of the defendant. This request was refused by the Court, and such refusal is assigned as error. It is this assignment of error, and this alone, upon which the plaintiff in error relies for a reversal of the judgment below,—its contention being that there was no evidence in the case which would warrant the submission of any question whatever to the jury.

The determination of the assignment of error relied upon by the plaintiff in error, necessarily involves a consideration of the following questions:

1. Should the trial Court have submitted to the jury the question, whether the plaintiff below, and his co-employees at the time of the accident, were or were not follow-servants?

2. If it was the duty of the Court, and not of the jury, to determine the question of fellow-service, then were the plaintiff below and his co-employees—the loading gang—fellow-servants?

3. Was there any testimony tending to show that it was the duty of the defendant company to instruct the plaintiff respecting the work he was directed to do, and warn him of any dangers incident thereto?

4. Was there any testimony tending to show that it was the duty of the company to have made and promulgated rules governing the work in which the plaintiff below was engaged?

5. Was there any testimony tending to show that the place in which the plaintiff was ordered to paint the column was an

unsafe place within the meaning of the law?

No question was raised by the plaintiff below as to suitable and proper appliances, or the sufficiency and competency of fellow-servants. It is not necessary, therefore, for us to consider those matters at all.

Did the Court below err in submitting to the jury the question, whether the loading gang were or were not the fellow-servants of the plaintiff below when engaged in painting the iron column?

We think there can be no difference of opinion respecting the law upon this point. If the facts that are necessary for its determination are not disputed, then clearly it is for the Court to decide and not the jury.

In *Labatt* on *Master* and *Servant*, at *Section* 494, the rule is stated as follows:

"What servants are in a common employment is not a question of fact exclusively, nor is it solely a question of law. It depends for solution upon both law and fact. But when the necessary facts for determining the question are undisputed, it is then simply a question of law. The Court, therefore, may nonsuit the plaintiff, or may direct a verdict for the defendant, or set it aside if rendered for the plaintiff, where the only negligence in evidence is that of a fellow-servant acting in the performance of his duties as a servant."

And at *Section* 511, the learned writer continues: "It has frequently been explicitly declared, and is .taken for granted in almost all the cases cited in this chapter, that it is for the Court to say whether or not the negligent employee was a vice principal in every case in which the facts are clearly established, and show precisely what were the respective duties of the plaintiff and the delinquent co-employees, and what relation they bore to one another. Under such cricumstances, it is error to submit to the jury the question whether the defense of co-service is or is not available."

Such has been the principle, or rule, upon which the Courts of this State have uniformly acted, and we have known of no excep-

tion to the rule prior to the present case.

The important question, therefore, is, was there any conflict in the testimony below respecting those facts that were necessary to determine whether or not the relation of fellow-service existed? It is true that the plaintiff below denied certain statements made on behalf of the defendant,—such as, the time during which he had been working as painter; whether in the shop or yard, that he had been instructed in the work of painting; that he had painted out the skid marks on the second column before getting on the car, and while it was suspended in the hooks, that the general foreman did not bring Valente, the plaintiff below, to Shop "C," on the morning of the accident, but found him there engaged in painting the second column, when he directed him to get on the car, that after being transferred from the gang of laborers to that of painters, Valente did not continue to be under his Italian foreman, and was not kept at work in the yard.

But these controverted facts are quite unimportant and immaterial to the main question we are considering, and there is no conflict in the testimony respecting those facts we have stated as undisputed, and which are necessary and sufficient to determine whether the relation of fellow-service existed between the plaintiff below and his co-employees—the loading gang—at the time of the accident.

We are clearly of the opinion, therefore, that the Court below erred in submitting such question to the jury.

2. The assignment of error relied upon by the plaintiff in error makes it necessary for this Court to decide whether the plaintiff below and his co-employees were or were not fellow-servants, because if they were not, the Court below did not err in refusing to direct the jury to return a verdict in favor of the defendant.

It is not denied that the plaintiff, Valente, and his co-workers at the time of the accident were the employees of a common master. Were they not also at such time engaged in a common employment? They were unquestionably engaged upon the same subject matter, to wit, the column of iron, the loading gang

in placing it upon the car, and the plaintiff in finishing the paint-
ing of the column after it was so placed.    The work of each was
necessary to put the column in proper place and condition for
shipment.    Under the great weight of authority, we think it
must be admitted that the service in which both Valente and the
loading gang were engaged was a common employment.

It is unquestioned law in this State, and has been since the
leading case of *Wheatley vs. P., W. & B. R. R. Co.*, 1 *Mar.* 305, was
decided, that if the injured servant and his delinquent  co-em-
ployees were at the time of the accident employed by a common
master and engaged in a common employment, the relation of
fellow-servants existed unless the servant whose negligence caused
the injury was at the time engaged in the performance of one of
the primary duties of the master.

"Where the servant is performing any of these duties, he is
the agent and representative of the master, and the master is
liable to an injured employee for the negligence of the offending
servant therein.    When this rule does not apply the co-employees
are fellow-servants and the master is not liable.    This is the doc-
trine as it now has become crystallized in the reports of the Su-
preme Court of the United States.    *    *    *    Indeed, we may
say of the overwhelming majority of all the well-considered and
well-reasoned cases on this subject."—*Wheatley case.*

It is manifest that no  member of the  loading gang was
performing any of the primary duties of the master at the time
of the accident.

The apparent conflict in many of the cases has arisen from
the  differing  vivs of courts as to what is meant by the term
"common employment."    It certainly does not depend upon the
grade of the servant in  the  master's employment, nor upon the
time he has been engaged in the service or employment in which
the injury happens.

The defendant seemed to rely largely upon the case of *R. R.
Co. vs. Ross*, 112 *U. S.* 377, in which Justice Field, delivering the
opinion of the Court said: "There are in this country many
adjudications of courts of great learning, restricting the exemp-

tion to cases where the fellow-servants are engaged in the same department, and act under the same immediate direction." But it should be noted that this case, after being frequently questioned, was distinctly overruled by the Supreme Court in *New England R. R. Co. vs. Conroy*, 175 *U. S.* 323, and other cases subsequently decided. But even if the test recognized in the *Ross* case were applied to the present one it would be fully met.

In the Conroy case the Court said: "Unless we are constrained to accept and follow the decision of the Court in the case of *Chicago, M. & St. P. R. Co. v. Ross*, 112 *U. S.* 377, we have no hesitation in holding, both upon principle and authority, that the employer is not liable for an injury to one employee occasioned by the negligence of another engaged in the same general undertaking; that it is not necessary that the servants should be engaged in the same operation or particular work; that it is enough, to bring the case within the general rule of exemption, if they are in the employment of the same master, engaged in the same common enterprise, both employed to perform duties tending to accomplish the same general purposes, or, in other words, if the services of each in his particular sphere or department are directed to the accomplishment of the same general end."

There is no question that the general foreman had the right to put Valente upon the work of painting the column; indeed he had been sent a few days before by his Italian boss from his former work to do similar work (painting) in and about the shop. Valente and the loading gang were employed upon the same definite object at the same time, and under the immediate direction of the same person. The service in which they were engaged was in the same general line, and the object a common one, to wit, the loading and painting of the same columns of iron for the purpose of shipment and delivery.

Such being the case, and the servants who caused the plaintiff's injury not being at the time engaged in the performance of any primary duty of the master, we feel constrained to hold that they were, in the meaning of the law, fellow-servants of the plaintiff.

3.   Was there any testimony tending to show that it was the duty of the defendant company to instruct the plaintiff  below respecting the work he was ordered to do, and warn him of any dangers incident thereto?

It is contended by the defendant in error that such duty was imposed upon the company because of Valente's ignorance of the English language, and his unfamiliarity with the work he was directed to do, as shown by the evidence.

The duty of the master to give instructions to a servant is based upon the assumption that the master possesses some knowledge concerning the work and its dangers that the servant by reason of ignorance or inexperience does not possess.   It is a general rule that a servant holds himself out as capable of doing the work he undertakes to do, and that he assumes the risks incident to the employment.   The objection made by the defendant in error, is that he was taken, or changed, from the kind of work he was originally employed to do, and assigned, without any instruction or warning, to a work that he was entirely unfamiliar with.

Now, while Valente was ignorant of the English language, it is not shown that he was not a man of at least ordinary intelligance or, that the company had not the right to change him from the one kind of work to another that he might be supposed to be capable of doing.   He was not entirely unfamiliar with the work which he was directed to do because he had been engaged for several days just prior to the accident in painting different objects in and about the shop.   His last employment was not in itself a difficult or dangerous one,   He must have realized what was going on in his very presence when the loading gang was placing the second column on the car.   Labatt, in his work above referred to, at *Section* 462, says:   "In so far, therefore, as he comprehends, or ought to comprehend them, he assumes all the ordinary and extraordinary risks of the new duties, whether he be a minor or an adult."   And at *Section* 463:   "So also it is held that no action is maintainable where the servant had, as compared with the master, an equal or better opportunity to see and know

the extent of the danger. The law supposes every adult to possess such ordinary intelligence, judgment and discretion as will enable him to appreciate any obvious danger. The master, therefore, has a right to assume that an adult employee possesses that knowledge which is acquired by common experience, that he knows everything which is a matter of common knowledge or presumed to be within the common experience of all men of common education. That he understands those dangers which are the subject of common knowledge or which can be readily seen by common observation." Valente, the plaintiff below, knew the position of the column he was working upon, and knew, as well as anyone could know, that if it was struck with sufficient force it would fall. There was no latent or hidden danger in the situation and any peril that may have existed was as obvious to him, and more so, than to the master. It may be true that the danger of Valente's position was more obvious to the members of the loading gang than to himself, but their relation to him was that of fellow-servants, and not of vice principals, and any negligence upon their part, either in the failure to give him notice and warning, or in their carelessness in loading the second column, he of course assumed.

4. Was there any testimony tending to show that the defendant below should have made and promulgated rules governing the service in which the plaintiff below was engaged? There was no evidence whatever tending to show that the work was of such a character that a rule was necessary for its safe performance; that the injury to the plaintiff below was caused by the absence of rules, or what particular rule was required.

This Court has repeatedly declared that when the business of the employer is so large and complicated as to make his personal supervision impossible, it is his duty to promulgate rules and regulations governing and controlling the conduct of such business. But this does not mean that there should be rules governing every detail of the employer's business. Such a requirement would be not only unreasonable but impossible to comply with. The business in which Valente and his fellow-servants were engaged

at the time he was injured, was one of the ordinary details of the master's large business, and manifestly the master could not be expected, or required, to provide for the doing of such things by specific rules and regulations. The duty to be performed was simple, and. the means of doing it easily understood.

Labatt, in his work above mentioned, at *Section* 211, says: "But in the absence of evidence showing that rules would be useful or feasible under the circumstances, the master cannot be found negligent in not having promulgated them. It is therefore error to leave the case to the jury where the plaintiff has offered no evidence which indictates that other employers in the same business had promulgated any such rule, or that the suggested rule was necessary or practicable, or that the necessity and propriety of making such a rule was so obvious as to make the question one of common knowledge and experience. * * * If the plaintiff relies upon the theory that some specific rule should have been promulgated under the circumstances, he must show not only that the rule suggested was necessary, but that it was reasonable and proper, and if observed would have adequately protected the employees. As a master is entitled to conduct his business on the assumption that servants will use ordinary care, he is not under any duty to make rules for the purpose of regulating acts which are in themselves negligent."

We think it was not the duty of the defendant below to have made and promulgated rules respecting the work in which the plaintiff below was engaged, such work being of a very simple character, easily understood, and one of mere detail in the business of the company. And it may be also said that there was no evidence whatever showing what kind of rules were required, that rules of any kind were necessary, or that the absence of rules was the cause of the injury to the defendant in error.

5. We come now to the last question raised by the assignment of error, and that is, was there any evidence at the trial below tending to show that the defendant company failed to furnish for the plaintiff below a safe place in which to do the work he was ordered to do? We have had some difficulty in reaching a

satisfactory conclusion upon this point, but we think the one we have reached is in conformity with the well-settled rules of law upon the subject, and amply supported by authority.

Unquestionably the place—that is the car—where Valente was painting, was safe in itself. It was inherently safe, free from any hidden danger. It is true that the master is required to furnish and maintain a safe place. But we do not think the master may be charged with failing to furnish or maintain a safe place when the place, being perfectly safe in itself, is made unsafe or dangerous solely by the negligent acts of fellow-servants in carrying out the details of the master's business.

The law upon this point has been very clearly and correctly stated by Labatt in his said work on *Master and Servant*, at *Section* 601, as follows:

"The general principle that the master's duty to provide a safe place of work is not deemed to have been violated where the unsafety is caused solely by the acts of co-servants in carrying out the details of the work, clearly involves the corollary that the master is not chargeable with the failure of those servants to warn each other as to the existence of dangerous conditions which have already supervened. Similarly all the authorities, with the exception of the single New Jersey case cited in *Section* 580, *ante*, seem to agree that a master is not liable for the negligence of a servant in failing to notify a co-employee of the approach of a transitory peril which, as the work progresses, will render the environment unsafe for a brief period, but which may easily be avoided if due warning is given."

The case now before us comes clearly within this rule, and we therefore hold that the defendant below cannot be charged, under the evidence, with having failed to furnish a safe place in which the plaintiff below should do the work he was directed to do.

Our conclusion upon the whole case is, that while the Court below in its charge to the jury stated the law upon the various points raised with clearness and accuracy, they did err in submitting to the jury the question of fellow-service; and inasmuch

as the plaintiff below and his co-employees—the loading gang—were fellow-servants, and it was not shown that the defendant below had failed to perform any duty he was required, under the law, to perform, the Court erred in refusing to instruct the jury to return a verdict in favor of the defendant.

The judgment of the Court below is reversed.