FREDERICK KRAUSE *vs.* HARRY EMMONS, Executor of Henry Blouth, deceased.

1. WITNESSES—COMPETENCY—"TRANSACTION WITH DECEDENT."

*Rev. Code* 1852, amended to 1893, *p.* 798 (16 *Del. Laws, c.* 537), declares that in actions by or against executors or administrators neither party shall be allowed to testify against the other as to any transaction with or statement by deceased, unless called by the opposite party. An employee in a brewery was injured while assisting to move a condenser under the direction of the owner's vice-principal. The owner was not present and had no control over the work. *Held,* that the servant, notwithstanding the owner's death, might testify as to the accident in an action against the owner's executor, as the servant's testimony did not relate to a transaction with a deceased person, which might be said to be an occurrence or action as to which both deceased and the other party had knowledge.

2. TRIAL—INSTRUCTIONS—REQUESTS—INJURIES TO SERVANT.

In a servant's action there was evidence that the injury was caused by the negligence of fellow servants. The court charged generally that a servant assumes the ordinary risks of his employment, which includes the carelessness and negligence of those in the same employment; but the charge on the facts declared that if the servant was appointed to a post of danger by the master's vice-principal, and injury resulted by reason of his incompetency, the master was liable if he knew or should have known of such incompetency, unless the servant was guilty of negligence proximately contributing to his injury. This portion of the charge further recited that the servant assumed the risk of negligence of fellow-servants. *Held,* that the charge was not a sufficient presentation of the fellow-servant rule, and so the refusal of a charge specifically submitting that rule was error.

3. MASTER AND SERVANT—INJURIES TO SERVANT—FELLOW SERVANT.

A brewery employee, who had charge of all brewing operations and controlled the servants, is the master's agent or representative, and is not a fellow servant of an ordinary employee.

(*February* 1, 1915.)

PENNEWILL, C. J., and CONRAD and HEISEL, J. J., sitting.

*Edward W. Cooch* and *Herbert H. Ward* (of *Ward, Gray and Neary*) for plaintiff.

*Harry Emmons* and *Levin Irving Handy* for defendant.

Superior Court, New Castle County, January Term, 1915.

ACTION ON THE CASE, No. 60, January Term, 1914.

Action by Frederick Krause against Harry Emmons, executor of Henry Blouth, deceased, to recover damages for personal injuries alleged to have been occasioned by the negligence of the defendant's testate. There was a verdict and judgment for plaintiff, and defendant took a bill of exceptions, subsequently suing out a writ of error. Reversed.

M. testified, in substance, that at the time of the accident he was brewmaster in the brewery of the deceased, and in that capacity had control of the different departments thereof, excluding the office; that he hired and discharged the men connected with the brewing; that he employed K., the plaintiff, whose duty it was to boil beer in the kettle, and to start and stop the machinery, but who when called upon would help at anything concerning the brewery; that he employed W. to work in the cellar, but his duties included the cleaning of the vats; that T. was a carpenter employed by the deceased to do repair work; that he (the brewmaster) was directed by the deceased to move the old condenser (described in the charge of the court to the jury) to make place for a new condenser; that he had never moved a condenser, or similar structure before; that he had charge of the running of the old condenser, but not to move it until he was directed by the deceased to do so; that moving it was work outside of the regular employment of those engaged in it; that the deceased was not present at the moving; that he (the brewmaster) was supposed to be boss of the men in charge of the moving, and that he placed the plaintiff in the position he was when hurt.

During the trial the following question was asked the plaintiff by his counsel, viz.: "How did the accident happen?"

The question was objected to by counsel for defendant on the ground, that the plaintiff, if permitted to answer the question, would testify respecting a transaction with the deceased, the defendant's testate, which is not permissible under the law of this state. The court, after argument rendered the following decision:

PENNEWILL, C. J.:—By *Section* 1 of *Chapter* 537, *Volume* 16, *Laws of Delaware*, it is provided:

"That in actions or proceedings by or against, executors, administrators or guardians in which judgment or decree may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate or ward unless called to testify by the opposite party."

A similar question, in principle, was before the court in *Di Nardi v. Standard Lime & Stone Co.*, 3 *Boyce*, 369, 84 *Atl.* 124. In that case the administrator of the deceased was the plaintiff. The questions asked the witness and objected to were:

(1) "Were you working at the crusher of the Standard Lime and Stone Company on the sixth day of December, 1907 (the day of the accident)?"
(2) "Did you see Alexander Di Nardi, the deceased, anywhere around the bin?"

Counsel for defendant contended that the witness was disqualified by the statute from testifying, not only with respect to matters that relate to transactions with and statements by the decedent, but to any other matter.

The court overruled the objections, and permitted the witness to describe the conditions existing at the time of the accident, the work he was doing, and generally, whatever he said and did, on the ground that such testimony was concerning physical facts learned, not from any transactions with or statements by the deceased, but from his own personal observation, and concerning which the opportunity of the defendant of cross-examination was not limited or affected by the death of the intestate.

The obvious purpose of the statute was very clearly stated by the court in the *Di Nardi case*, and need not be repeated here.

In conformity with the ruling in that case, we hold that the plaintiff may testify respecting anything he saw or did at or about the time of the accident, provided such testimony has no relation to his employment, or his duties, under any contract or agreement with his deceased employer. He may describe how the accident happened by relating the physical facts. He may in like manner describe his injuries, caused by the accident. In giving such testimony the witness would not be testifying "as to any transaction with or statement by the testator."

We overrule the objection to the question asked the witness.

At the conclusion of plaintiff's testimony, counsel for defend-

ant asked the court to direct a nonsuit, for the reasons stated in the following opinion of the court upon defendant's prayer for binding instructions in favor of the defendant at the close of the testimony. Motion for nonsuit refused, also prayer for binding instructions.

PENNEWILL, C. J., delivering the opinion of the court:

We are asked to direct the jury to return a verdict in favor of the defendant. This prayer is based upon the two grounds that were urged and argued in favor of the motion made for a nonsuit at the close of the plaintiff's case.

Those grounds are:

1. That there is no evidence which shows that the plaintiff's injury was caused by the negligence of the defendant, and,

2. That there is evidence which shows that the plaintiff's own negligence proximately contributed to his injury.

The plaintiff has averred, and claims to have proved, that the defendant was negligent: (1) In failing to provide a competent person to take charge of, superintend and control the removal of the condenser, the falling of which caused the injury complained of. (2) In failing to provide a sufficient number of capable men to effect said removal with safety to the plaintiff.

These averments mean, that the defendant did not use due care in selecting and providing a foreman and assistants competent to perform the work he ordered the foreman to do, viz., the removal of the condenser from the pan in which it stood, so that a new machine could be placed therein.

It is the duty of the employer to exercise reasonable care in the selection and retention of his employees, to the end that fellow servants or co-employees may not be endangered in the performance of their duties by the conduct of other employees of the defendant who are unskillful or careless in the performance of their duty. The employer is required to employ and retain in his service co-workers and fellow servants reasonably competent and careful for the performance of the particular work in which they are engaged. The degree of care thus required, is proportioned to the risk or hazard of the particular business in

which the employee is engaged.   *Warren v. H. & H. Corporation*,
3 *Boyce*, 182, 84 *Atl.* 215.

It is undisputed that the employment of servants reasonably
competent to perform the work they are ordered to do, is one of.
the positive duties of the master; that the failure of the master
to employ such servants is negligence on his part, and if a co-
employee is injured because of such failure without contributory
negligence on his part, the master is liable.

We think it is clearly proved in this case that Moeller, the
employee assigned and ordered to remove the condenser had full
charge of the master's brewing business and controlled the differ-
ent departments of the brewery.  With the exception of the
office, the operating part of the brewery was entirely in his charge,
and he had power to employ and discharge servants connected
with the business.  In selecting and providing the men to assist
him in the work of removing the condenser, Moeller was acting
as the agent, representative or vice-principal of the master.  He
was performing a primary duty of the master, just as though the
master was doing it in person.  Two of the three men who assisted
Moeller in moving the condenser were hired by him and one by
Blouth, the master.  One of the three was kettle man, another
cellar man and the third a carpenter seventy years of age.

The important questions the court are now required to deter-
mine are (1), whether there is any evidence that should be sub-
mitted to the jury showing that Moeller, and the other servants
selected to assist him in removing the condenser, other than the
plaintiff, were incompetent to perform the work with reasonable
safety to the plaintiff; and (2) if they were incompetent, whether
the master—Blouth—knew, or should have known that fact.

In order to determine these questions, we must consider the
character of the machine that was to be moved, and the work
required to effect the removal; as well as the experience and
ability of the servants assigned to do the work, as shown by the
evidence.

The condenser, according to the evidence, consisted of a
stack of eighteen metal pipes, each about two inches in diameter
placed parallel to each other, constituting a structure about

twenty feet long, seven feet high, two inches wide, and more than a ton in weight, standing in a pan, the sides of which were six or eight inches above the floor, and resting on three sets of feet ten inches long, which were the ends of iron straps that held the condenser together, one being at each end and the other in the middle.

The condenser was to be moved from the pan in which it stood, on to the floor, and then several feet across the floor to the side wall of the room.

According to the testimony of Moeller, when the condenser was outside of the pan the feet on one side sank into the floor, which caused the machine to tip or lean over, and he directed the three assistants to push against the leaning side in order to prevent the condenser from falling. Moeller was at the time jacking up the machine on the other side.

The evidence shows that Moeller, who was foreman of the gang and in charge of the work of removal, had never moved a condenser or any similar structure before, that he had had no experience in such work. He was employed as a brewmaster. The duties of the plaintiff were to do the work in the brewhouse, to boil the beer in the kettles and start the machinery and stop it. The duties of Wegmann, another assistant, were to do the work in the cellar. Tarbutton was a carpenter and was employed mainly to do carpenter work. These three assistants were expected to do any work about the brewery, upon the direction of Moeller. None of them had ever had any experience in moving condensers or other heavy machinery.

Moeller testified that he had charge of the condenser as far as running it was concerned, but not to move it. He further testified that the moving of the condenser was not a part of the plaintiff's regular employment, and that it was work that nobody could foresee. Were these men, and particularly Moeller who had charge of the work, reasonably sufficient and competent to perform the work assigned them? If the work could not be done by Moeller, Wegmann and Tarbutton with reasonable safety to the plaintiff, and it was not dangerous if done by men experienced in such work, then the servants engaged in the undertaking were

not competent workmen within the meaning of the law, and the master was negligent in directing them to do the work.

The moving of some machines and objects much heavier than the condenser would not be attended with danger. For example, a large safe, resting on wheels or rollers, might be safely moved over a floor from one place to another, by employees inexperienced in such work, but it might be very dangerous for such workmen to undertake to move the same object through a window or down a stairway. So, after all, common sense indicates that the danger connected with moving a heavy machine depends not so much on its bulk and weight, as upon the nature of the work required and the care and judgment exercised in performing the work.

If this condenser had stood upon the floor on wheels or rollers there would have been perhaps no danger that would not be incident to the moving of any heavy object, and workmen without any experience in such work might have been competent to perform it. But it stood in a pan and rested upon feet that were only ten inches long. It seems to the court that under such conditions the removal of the condenser, with reasonable safety to the plaintiff, required men possessing not only good judgment, but also some experience in the removal of heavy objects, in which the work is attended with considerable danger unless much care and circumspection is exercised. The peculiar shape and heavy weight of the condenser unquestionably made it liable to tip and fall over unless it was moved with great care, and it may be that the requisite care could not be exercised by any one who did not possess peculiar knowledge of the work. It is not for the court to say whether the servants assigned to remove the condenser were competent to exercise such care or not. All that the court can decide is, whether there is any evidence upon this point that should be submitted to the jury. We think there is, because the jury have the right to consider in this connection any evidence produced respecting the character of the machine, the nature of the work required to move it, and also the experience or lack of experience of the persons assigned, as well as their knowledge or ignorance of the work required.

Opinion.

There is another question to be considered in connection with the sufficiency and competency of the servants assigned to move the condenser, and that is, the knowledge of the master in that regard. Even though such servants were incompetent the master would not be liable, because of that fact, unless he knew or should have known of the incompetency. The proposition may be stated in a different way. It is the duty of the master to exercise due care in the selection of servants who shall be reasonably competent to perform the duties they are directed to do, and that are contemplated by their employment.

If such servants are not competent, and the master by the exercise of ordinary care might have known that fact, then he did not exercise proper care in their selection.

Is there any evidence on this point that should be submitted to the jury? We think there is, because in determining whether the master knew or should have known of that fact, the jury may consider, as the court may consider upon this prayer, the character of the machine, the nature of the work to be performed, including its difficulties and dangers, as well as the servant's capacity, ability and previous employment as known to the master, and as disclosed by the evidence. Upon due consideration of such facts, the court are of the opinion that they constitute some evidence upon which the jury might find that the master had, or should have had, knowledge of the incompetency of the foreman Moeller who was directed to move the condenser, as well as of the insufficiency and incompetency of his assistants.

We will now consider briefly the second ground upon which defendant bases his prayer for binding instructions, viz., the contributory negligence of the plaintiff.

Upon this point we say, it is a question for the jury to determine whether the plaintiff was or was not guilty of such contributory negligence as would prevent him from recovering. It is true that he placed himself in a position of danger when he stood by the side of the condenser and pushed against it in order to keep it from falling. But he took such position upon the order of Moeller who was his boss and in full charge and control of the work.

In the above-mentioned case of *Warren v. H. & H. Corpora-*

*tion*, the court lay down the following propositions of law respecting the rights and duties of an employee who relies upon the performance by the master of his duty in the selection and retention of competent co-workers.

1. An employee is entitled to assume that his employer has exercised due care and diligence in the selection and retention of reasonably competent and careful co-employees, and is not chargeable with knowledge of their incompetency and carelessness until he has notice thereof by information or circumstances reasonably sufficient for that purpose.

2. A person entering into the employment of another assumes the usual risks of the employment, excluding that of the negligence of the employer, and including that of the pure negligence of the co-employee.

3. The employer is liable for the negligence of a careless and incompetent fellow servant, in the selection and retention of whom he has not exercised due and reasonable diligence, if it be shown at the same time that the injured co-employee used ordinary care and prudence to avoid the injury.

Whether or not, therefore, the plaintiff was guilty of contributory negligence at the time of his injury would depend (1), upon whether he had, or should have had, knowledge of the incompetency of Moeller who was operating on the other side of the condenser; and (2), whether he exercised ordinary care and prudence to avoid the injury.

Certainly it would be for the jury, and not for the court to determine, whether the plaintiff, relying upon the master's care and diligence in the selection of competent co-workers for the undertaking, should have known or anticipated the danger of his situation and endeavored to escape before he attempted to do so. Under all the circumstances, was the peril so obvious and the situation so dangerous that it was negligence on the part of the plaintiff to continue to push against the wall as long as he did, taking into account his own testimony that the condenser had not commenced to tip or lean towards him till he began to push, and that he tried to escape as soon as it began to tip over?

The court cannot say, as matter of law, that the plaintiff

was guilty of contributory negligence. It is one of the questions in this case that must be determined by the jury under the evidence.

We will be constrained to refuse the defendant's prayer for binding instructions.

Further facts, and the questions of law presented, appear in the charge to the jury.

PENNEWILL, C. J., charging the jury:

The plaintiff seeks to recover in this action damages for personal injuries which he alleges were caused by the negligence of Henry Blouth, the defendant's testate.

The plaintiff avers, that at the time of the accident Blouth was engaged in conducting a brewery in this city, and that he the plaintiff was employed in said business as a brewer in the position of kettleman; that said Blouth maintained in his said business an apparatus called a condenser, which consisted of a stack of metal pipes, each about two inches in diameter, placed parallel to each other, constituting a structure about twenty feet long, about six and one-half feet high, weighing about three thousand pounds, and resting upon metal feet on the floor of the brewery; that on the twenty-seventh day of January, 1913, the said Blouth directed his brewmaster Henry P. Moeller, with the assistance of the plaintiff and two other persons, to move the said condenser, and the said Moeller, in obedience to said directions, proceeded to move the condenser from its ordinary location to another location in said brewery; that the removal, owing to the weight, shape, unwieldy proportions and unstable equilibrium of the condenser was a difficult and dangerous operation, and required special knowledge of proper methods and safeguards to prevent injury to those engaged therein, and experience and skill on the part of those in charge thereof; that the said Blouth negligently put the removal of the condenser in the charge and control of his brewmaster and foreman Moeller, who was without such special knowledge, experience and skill; that neither the plaintiff nor either of the other two assistants had knowledge, experience or skill in moving condensers or other similar structures; that the

8

plaintiff had no knowledge or experience of the dangers attending the moving of such a structure as the condenser nor of the proper method to accomplish the same, and was not instructed thereon; that said Blouth through his agent Moeller, and by reason of said inexperience, lack of knowledge and skill of said agent negligently failed to take due and reasonable precautions to prevent the toppling over of the condenser when it was loosened from the floor; that said Blouth, through his agent Moeller, directed the plaintiff to stand alongside said condenser to steady the same; that the place and duty so assigned was a place of danger and a duty involving great risk and danger to the plaintiff, and by reason of said negligence of Blouth, and while the plaintiff was performing the duty as aforesaid, and exercising due care and caution on his part, the condenser toppled over on its side, and in falling caught the plaintiff beneath it and injured his head, shoulder and leg, and crushed and injured his foot and ankle.

Having given the averments of plaintiff's first count at some length, it will be unnecessary to notice the other two counts except to say, that the additional averment in the second count is, that Blouth, through his agent Moeller, negligently failed to call to his assistance and provide an adequate number of men to effect the removal of the condenser with safety to the plaintiff; and that the additional averment in the third count is, that Blouth, through his agent Moeller, negligently failed to call to his assistance and provide an adequate number of capable and careful men to effect said removal with safety to the plaintiff.

The defendant, who is the executor of Henry Blouth, denies that his testate was guilty of any negligence that caused the plaintiff's injuries, and claims that if there was any negligence that caused said injuries it was the negligence of the plaintiff himself. The defendant insists that the men who were directed to move the condenser were reasonably competent workmen, and capable of performing the work with reasonable safety to the plaintiff; that the work was not such a difficult and dangerous one as to require workmen specially experienced in that line; that Blouth had exercised due and ordinary care in the selection

of his workmen, and if they were not reasonably competent to perform the work of moving the condenser he did not know of their incompetency, and could not have known of it by the exer-cise of due care.

The following facts were agreed upon by the parties to the suit, and did not, therefore, have to be proved, viz.: That Henry Blouth was owner of and was conducting the brewery on French Street between Front and Second Streets in Wilmington, Del., during the month of January, A. D. 1913; that Henry Blouth died testate, and by his will appointed Harry Emmons, the defendant, his executor; that letters testamentary were duly issued to Harry Emmons before the bringing of this suit.

The court are asked by the defendant to give binding instruc-tions to the jury to render a verdict for the defendant. This we decline to do. We think the case should be submitted to the jury for their determination upon the evidence, after applying thereto the law as declared by the court.

This case, as you have doubtless observed, is based upon the alleged, negligence of the defendant's testate Henry Blouth.

Negligence is never presumed, it must be proved; and the burden of proving it is cast upon the plaintiff. In order that the plaintiff may recover, the jury must be satisfied by the prepon-derance or greater weight of the evidence that the plaintiff's injuries were caused by such negligence of Henry Blouth as is de-scribed in the declaration.

Negligence in a legal sense is the want of due care, that is, such care as an ordinarily prudent man would exercise under like circumstances. It is the failure to observe, for the protection of another that degree of care and vigilance which the circum-stances justly demand.

The ground upon which an employee may recover from his employer for personal injuries sustained in the latter's service is, that such injuries were caused by a violation or neglect of some duty which the employer owed his employee. It is the violation or neglect of such duty that constitutes negligence on the part of the employer; but even then the injured employee could not recover if the jury should be satisfied from the evidence that his

own negligence proximately contributed to his injuries. Where contributory negligence is relied on as a defense it must be proved by a preponderance of the evidence, and the burden of proving it rests upon the defendant, if it does not appear from the testimony produced by the plaintiff.

In the noted case of *Wheatley v. P., W. & B. R. R. Co.*, reported in 1 *Marvel*, 305, 30 *Atl.* 660, the court said:

"The general rule is that he who engages in the employment of another for the performance of specific duties for compensation takes upon himself the natural and ordinary risks and perils incident to the performance of such service, which include the carelessness and negligence of those who are in the same employment."

This is a very compact and correct statement of the rule respecting the assumption of risks by the servant; but, as the court say, it is the general rule. Whether it applies to the particular case depends upon whether the employee whose negligence caused the injury was at the time a fellow servant of the injured workman or the representative of the master.

In the *Wheatley case*, the court continued:

"The true test whether an employee occupies the position of a fellow servant to another employee or is the representative of the master is to be found not from the grade or rank of the offending or injured servant, but is to be determined by the character of the act being performed by the offending servant which caused the injury.　*　*　*

"There are certain positive duties which the master must perform, and the person who discharges any of these duties, no matter what his rank or grade, no matter by what name he may be designated, cannot be a fellow servant; he is an agent, and the rule applicable to principal and agent must apply.　*　*　*

"Whenever the servant is doing work which attaches to and should be performed by the master as such, he represents the master, and does not hold the relation of fellow servant to the other employee who may be injured by his negligence."　*　*　*

The court in the same case sum up the duties of the master as follows:

"He must furnish for his employees a reasonably safe place in which to work; reasonably safe machinery and appliances with which to work; he must exercise due care and caution in selecting competent and trustworthy co-workers; and it may be he should make and promulgate rules for the government of his establishment whenever it is so large or complicated, as to make his personal supervision impracticable. These are the master's positive duties, negligence in meeting any of which makes the master liable.

We think this is probably the extent of his liability. When the servant is performing any of these duties, he is the agent and representative of the master, and the master is liable to an injured employee for the negligence of the offending servant therein. When this rule does not apply, the co-employees are fellow servants and the master is not liable."

The decision of the court in this case settled the law upon the much-vexed question of fellow servant, and since 1894 it has been recognized as the law of this state.

In one part of the opinion the court say that the true test whether an employee is a fellow servant or the representative of the master is determined by the character of the act being performed; that there are certain positive duties which the master must perform, and the person who discharges any of these duties cannot be a fellow servant, he is an agent of the master.

This general language might be construed to embrace such a duty as that ordered to be performed in the present case—the moving of the condenser.

But the court later in their opinion stated specifically what those duties of the master were, so as to remove all uncertainty and confusion on the subject. They were declared to be four in number, viz.:

The furnishing of a safe place; safe machinery and appliances; competent and trustworthy co-workers, and rules under certain conditions. The court said:

"When the servant is performing any of these duties, he is the agent and representative of the master. * * * When this rule does not apply, the co-employees are fellow servants."

The court declared this to be the doctrine of the overwhelming majority of all the well considered and well reasoned cases on the subject, and that it was uniformly the English doctrine prior to the statutes on the subject.

To emphasize the reason for the test prescribed, and the effect it was expected to have, the court used this language:

"It is the one reasonable and philosophic rule that lifts us out of the uncertainty and confusion that has clouded this branch of the law, and furnishes us a uniform and clear test."

The court applied the test to the case before them, and

thereby easily solved the problem of the relation of the two servants to each other. It appearing that the duty of the servant who caused the injury to his co-employee was in no way related to any of these four positive duties, it followed that the position of the offending co-worker was that of fellow servant and not of agent of the master.

So far as this court are advised there has been no enlargement, by subsequent decisions, of the duties of the master since the decision in the *Wheatley case*. The only apparent change has consisted in the declaration, often repeated, that the place, machinery and appliances should not only be furnished, but maintained, in a reasonably safe condition. This of course is what the decision really meant.

We think the safe and convenient rule established by the *Wheatley* decision should not be changed, and the duties of the master enlarged, because to do so would place this branch of the law again in the same uncertainty and confusion that existed prior to 1894.

The duty that Henry P. Moeller was ordered to do, and was engaged in doing at the time the plaintiff was injured was not one of the four things which comprehend the duties of the master according to the rule prescribed in the *Wheatley case*. We, therefore, decline to charge you that Moeller was the agent of Blouth during the performance of the work in which the plaintiff was injured.

But we do charge you that the plaintiff in this case had the right to assume that Henry P. Moeller, the foreman of Blouth and assigned by him to manage the moving of the condenser, was reasonably competent and careful to direct such moving with safety to the plaintiff, and he had the right to obey his orders as to the part he should take in such moving, unless the danger was so obvious that by the exercise of ordinary care he could have known and avoided the injury. And if the plaintiff was by the said Moeller appointed to a post of danger in said moving operation, and injury resulted to the plaintiff by reason of the incompetency of Moeller to safely direct and perform the work, which incompetency was known or should have been known to Blouth,

the defendant would be liable and the plaintiff entitled to recover, provided the plaintiff was not guilty of some negligence that proximately contributed to his injury.

A person entering into the employment of another assumes the usual risks of the employment, excluding that of the negligence of the employer, and including that of the negligence of a co-employee.

It is the duty of the master to provide a sufficient number of competent employees to do the master's work with reasonable safety; and if the jury find that Henry P. Moeller, who had charge of moving the condenser, failed to call to his assistance a sufficient number of competent men to move the condenser with reasonable safety to his co-workers, and injury resulted to the plaintiff because of such failure, while he was in the exercise of due care, the plaintiff would be entitled to recover provided the employer knew or might, by the exercise of due care, have known of the servant's insufficiency and incompetency.

We cannot charge the jury that they should find that Henry P. Moeller was either a fellow servant of the plaintiff or the agent of the master in directing and performing the work of moving the condenser. When the facts are undisputed the question whether the relation of fellow servant exists is one of law; or if the facts are controverted, a mixed question of law and fact. What the servant is employed to do is a question of fact; the capacity in which he does it is an inference of law. *Amer. Bridge Co. v. Valente*, 7 *Penn.* 310, 73 *Atl.* 400, *Ann. Cas.* 1912D, 69; *Buswell on Personal Injuries*, § 217.

It is the duty of the employer to exercise reasonable care in the selection and retention of his employees, to the end that fellow servants or co-employees may not be endangered in the performance of their duties by the conduct of other employees of the defendant who are unskillful or careless in the performance of their duty. The employer is required to employ and retain in his service co-workers and fellow servants reasonably competent and careful for the performance of the particular work in which they are engaged. The degree of care thus required of the employer in the selection and retention of his employees is

proportioned to the risk or hazard of the particular business in which the employee is engaged.

An employee is entitled to assume that his employer has exercised due care and diligence in the selection and retention of reasonably competent and careful co-employees, and is not chargeable with knowledge of their incompetency or carelessness until he has notice thereof by information or circumstances reasonably sufficient for that purpose.

But if an employer has exercised reasonable care in the selection and retention of reasonably careful and competent employees he is not liable. He is, however, liable for the negligence of a careless and incompetent fellow servant, in the selection and retention of whom he has not exercised due and reasonable care, if it be shown at the same time that the injured co-employee used ordinary care and prudence to avoid the injury. By a competent servant is meant a servant reasonably safe for the performance of the duties assigned to him, considering the nature of the work and the general safety of those engaged in a common employment. *Warren v. H. & H. Corporation*, 3 *Boyce*, 182, 84 *Atl.* 215.

While a master is liable to the servant for an injury resulting from the master's negligence, he is not an insurer of the servant's safety, neither is he bound to guard and protect him against all possible danger. The reason is, as we have seen, that the servant assumes the risks that are ordinarily incidental to his employment, and which are patent and known to him, which he could know by the exercise of due care, or which were as obvious to him as to the master. As to such risks the master is not required to give warning. Even though the defect is latent the master would not be liable unless the defect or danger was unknown to the servant and not discernible by the exercise of due care. *Creswell v. W. & N. R. R. Co.*, 2 *Penn.* 210, 43 *Atl.* 629.

Coming now to the application of these general principles of law to the present case, we say, if you are satisfied that the plaintiff's injuries were caused by the incompetence of Henry P. Moeller, his co-worker, to perform the work of moving the condenser with reasonable safety to the plaintiff, and are also satisfied that Blouth had not exercised due care in selecting Moeller

to do the work, the plaintiff would be entitled to recover, provided the plaintiff at the time used due care to avoid the injury. Or if you believe that the plaintiff's injuries happened because the master did not furnish a sufficient number of men, and reasonably competent men to perform the work with reasonable safety to the plaintiff, the plaintiff being at the time of his injury in the exercise of due care, the defendant would be liable provided the master had knowledge, or could have had by using due care, that a sufficient number of men, and competent men, were not furnished.

In determining these facts, viz., whether Moeller was reasonably competent to perform the work, and whether a sufficient number of men, and competent men, were furnished to do the work, and whether Blouth knew, or by the exercise of due care might have known, these facts, you may consider the character of the condenser, the nature of the work required to move it with safety to those engaged, the experience or lack of experience of those assigned to the undertaking, their knowledge or lack of knowledge and skill respecting such work, and any other facts or circumstances disclosed by the evidence touching the competency of Moeller, the sufficiency and competency of the men furnished for the work, and the master's knowledge, or means and opportunities of knowledge, of such facts.

If you believe that Moeller was reasonably competent to direct and perform the work of moving the condenser with reasonable safety to the plaintiff, and also believe that a sufficient number of men, and reasonably competent men, were furnished to perform the work, your verdict should be in favor of the defendant. Or if you are satisfied that Moeller was not reasonably competent, and that the number of men furnished to do the work were insufficient or were not reasonably competent, still if you believe that the master, Blouth, did not know these facts and could not by the exercise of reasonable care have known them, your verdict should be for the defendant.

We further say, that even though you are satisfied that the plaintiff's injuries were caused by the negligence of Blouth, the defendant's testate, still, if you believe that the plaintiff was

also negligent, and that his negligence proximately contributed to his injuries your verdict should be in favor of the defendant.

If your verdict should be for the plaintiff, it should be for such amount of damages as will compensate him for his physical suffering which he has endured in the past, and for such physical suffering as may be reasonably anticipated in the future, resulting from his injuries; also for all loss of wages or earnings which have hitherto been sustained by the plaintiff, and for any disability and destruction of earning power, resulting from the injury complained of, which may be reasonably anticipated in the future.

This is the usal statement of the measure of damages; but it is only fair and proper we should say to you that your verdict should not be the result of speculation, neither should it be influenced in any way by feelings of sympathy or prejudice. It should be based entirely on the evidence in the case. And further, even if the plaintiff was and is incapacitated from following his usual occupation in a brewery, he should endeavor to secure some other employment, the duties of which he may be able to perform. He cannot sit down and do nothing if capable of earning a living.

The true test or measure of his loss from inability to earn wages is the difference between his earning capacity before the accident and since.

Verdict for plaintiff.

The defendant took a bill of exceptions, and subsequently sued out a writ of error (No. 2, June Term, 1915), to Superior Court for New Castle County.

The cause came on to be heard at said June Term of the Supreme Court, Curtis, Ch., and Boyce and Rice, J. J., sitting.

The facts and questions of law considered appear in the opinion of the court.

(<em>January</em> 23, 1916.)

Rice, J., delivering the opinion of the court:

The action below was brought by Frederick Krause, the plaintiff, against Harry Emmons, executor of Henry Blouth, deceased, the defendant, to recover damages for personal injuries

received by the plaintiff while engaged in moving a condenser.

Frederick Krause was employed as kettleman, and, when not so engaged, to help at anything, in a brewery operated by Henry Blouth in Wilmington, during his lifetime. One Henry P. Moeller was the brewmaster and general foreman of the brewery, exclusive of the office. On January 27, 1912, the day of the accident, Moeller, with the plaintiff and two other workmen in the brewery, were engaged in moving a condenser out of a pan where it stood, and several feet across the floor to the wall of the room.

The condenser was a structure about twenty feet long, seven feet high and weighed about one ton. It consisted of eighteen two-inch pipes placed horizontally one above the other, and held in place by three metal straps on each side. The straps were placed at each end and in the middle and were each bent outward at the bottom, forming feet. The distance between opposite feet on the floor was about ten or twelve inches.

The condenser had been taken from the pan by the three workmen assisted and directed by Moeller, the foreman, and they were at the time of the accident engaged in moving it across the floor. The plaintiff and the two other workmen were stationed on one side of the condenser, to hold it balanced upright, while Moeller raised one end from the floor with a jackscrew. The intention was to push it along the floor with a crowbar, when raised. When the feet at the end raised were clear of the floor, the condenser became unsteady, began to move from side to side, and fell over towards and upon Krause, thereby injuring his foot. At the trial some testimony was introduced tending to show that the workmen, Wegmann and Tarbutton, at a moment sooner than necessary for their protection, withdrew their support from the condenser and jumped out of danger to a place of safety.

There are twelve assignments of error which the plaintiff in error has grouped under the following four heads:

*First.* That it was an error for the trial court in this case to permit the plaintiff to testify in his own behalf against the defendant who is the executor of Henry Blouth, deceased, concerning a

transaction between the plaintiff and Henry Blouth in his life-time, such transaction consisting of work done by the plaintiff Krause as a servant employed by the testate, Blouth.

*Second.* That it was an error for the trial court in this case to refuse to charge the jury as prayed for in the defendant's tenth prayer and to omit all instruction to the jury concerning the legal effect of the alleged negligence of the plaintiff and Tarbutton and Wegmann, or either of them, in failing to try to hold up the con-denser when it began to fall, if the jury should believe from the evidence that there was such failure on the part of them or any of them, and that the falling of the condenser was due to such negli-gence.

*Third.* That it was error for the trial court to charge the jury that there was sufficient evidence for them to consider and bring in a verdict on behalf of the plaintiff under each one and all of the three counts set forth in the declaration.

*Fourth.* That it was an error for the trial court to refuse the defendant's prayer for binding instruction.

[1] The plaintiff in error places assignments Nos. 1, 2 and 3 in the first group and they are as follows:

"No. 1. That the court erred in permitting Frederick Krause, the plaintiff, a witness produced on his own behalf, to give the following testi-mony to the jury:
" 'Q. Just state how the thing happened. A. We moved a condenser. Mr. Moeller told me that I should stand in the middle and hold the balance.' "

"No. 2. That the court erred in permitting Frederick Krause, the plaintiff, a witness produced on his own behalf, to give the following testi-mony to the jury:
" 'Q. What were you doing in the center of the condenser? A. Hold-ing the balance so it wouldn't tip over.' "

"No. 3. That the court erred in permitting Frederick Krause, the plaintiff, a witness produced on his own behalf, to give the following testi-mony to the jury:
" 'Q. When it began to tip, were you or not able to hold it up? A. No, sir; I tried to do it, but I couldn't hold it; it was too heavy. It fell down and mashed my foot.' "

The act of the Legislature bearing upon this question is found at *page* 798, *Code of* 1893, and provides that:

"No person shall be incompetent to testify in any civil action or pro-ceeding whether at law or in equity, because he is a party to the record or interested in the event of the suit or matter to be determined: Provided, that

in actions or proceedings by or against, executors, administrators or guardians in which judgment or decree may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate or ward unless called to testify thereto by the opposite party."

In some of the states by similar statutes parties in actions by or against an executor, etc., are made incompetent as witnesses, in any event, unless called by the opposite party.

It clearly appears from our statute that in actions by or against executors, etc., the parties are *not disqualified from testifying in their own behalf, but are disqualified only from giving testimony concerning any transaction with* or *statement* by the testator, etc., unless they are called to testify by the opposite party.

The purpose of the Legislatures in passing statutes of this kind is equality. In this state the intention was to prevent both parties, unless called as a witness by the opposite party, giving testimony of transactions with or statements by the deceased, concerning which the deceased, if living, could of his own knowledge contradict, corroborate or explain.

So much depends upon the particular facts in each case, that it would practically be impossible to define the word "transaction", as used in the proviso, in terms sufficiently comprehensive so as to include all facts which would be considered a transaction, and at the same time exclude all facts which would not be a transaction within the meaning of the act.

In general terms a transaction, within the terms of the statute, may be said to be an occurrence or action of which both decedent and the other party had knowledge, and to which the decedent if living would be equally qualified to testify with the other party.

At the trial, Krause, the plaintiff, was permitted by the court to testify, that he was assisting in moving the condenser; that at the time of the accident he was "holding the balance, so that it would not tip over," and when it began to tip over he "tried to hold it but couldn't"; "that it fell down and mashed his foot." Blouth, the decedent, was not present during the operation of moving the condenser or at the time of the accident.

We are of the opinion that the testimony of the witness Krause was not concerning a transaction with Blouth within the meaning of the proviso, as we believe it was not intended by the proviso in an action like the present one, to prevent either party from testifying concerning physical facts ascertainable by the witness by observation alone, the knowledge of which was not dependent upon any act, conduct or communication of the decedent, participated in by the latter and the witness.

For the above reasons we are of the opinion that the court below was not in error in admitting the testimony covered by the assignments of error Nos. 1, 2 and 3.

[2]  The second general division of the argument before this court was directed to the eighth assignment of error which is as follows:

"No. 8.  That the court erred in not charging the jury as requested by the defendant, as follows: 'If the jury believe that the falling of the condenser was due to negligence of either the plaintiff or of Tarbutton or of Wegmann or of all these three, in failing to hold up the condenser when it began to fall, the verdict should be for the defendant.'"

The court below did not charge in the language of this prayer, but did charge upon the law of negligence of a fellow servant as follows:

"In the noted case of *Wheatley v. P., W. & B. R. R. Co.*, reported in 1 *Marvel*, 305, 30 *Atl.* 660, the court said:

" 'The general rule is that he who engages in the employment of another for the performance of specific duties for compensation takes upon himself the natural and ordinary risks and perils incident to the performance of such service, which include the carelessness and negligence of those who are in the same employment.'

"This is a very compact and correct statement of the rule respecting the assumption of risks by the servant, but, as the court say, it is the general rule.  Whether it applies to the particular case depends upon whether the employee whose negligence caused the injury was at the time a fellow servant of the injured workman or the representative of the master.

"In the *Wheatley case*, the court continued:

" 'The true test whether an employee occupies the position of a fellow servant to another employee or is the representative of the master is to be found not from the grade or rank of the offending or injured servant, but is to be determined by the character of the act being performed by the offending servant which caused the injury.  *  *  *

" 'There are certain positive duties which the master must perform, and the person who discharges any of these duties, no matter what his rank or grade, no matter by what name he may be designated, cannot be a fellow

Opinion.

servant; he is an agent, and the rule applicable to principal and agent must apply. * * *

" 'Whenever the servant is doing work which attaches to and should be performed by the master as such, he represents the master, and does not hold the relation of fellow servant to the other employee who may be injured by his negligence.' * * *

"But we do charge you that the plaintiff in this case had the right to assume that Henry P. Moeller, the foreman of Blouth and assigned by him to manage the moving of the condenser, was reasonably competent and careful to direct such moving with safety to the plaintiff, and he had the right to obey his orders as to the part he should take in such moving, unless the danger was so obvious that by the exercise of ordinary care he could have known and avoided the injury. And if the plaintiff was by the said Moeller appointed to a post of danger in said moving operation, and injury resulted to the plaintiff by reason of the incompetency of Moeller to safely direct and perform the work, which incompetency was known or should have been known to Blouth, the defendant would be liable and the plaintiff entitled to recover, provided the plaintiff was not guilty of some negligence that proximately contributed to his injury.

"A person entering into the employment of another assumes the usual risks of the employment, excluding that of the negligence of the employer, and including that of the negligence of a co-employee."

These statements of the law made in connection with the law announced by the court in respect to the fellow-servant rule were calculated to lead the jury to believe that the statements had reference to the acts of Moeller and not to any acts of negligence of Tarbutton and Wegmann, fellow servants of the plaintiff, engaged in the work with him at the time of the accident.

In the above statements of the general principles of law the court did generally state the fellow-servant rule as one of other principles. But when at the end of the charge the court specifically applied these general principles to the case before it, there was an entire omission of the law of fellow servants, and no application of it to the facts in this case as requested by the defendant below. It was not there stated that if plaintiff's injuries were proximately caused by any negligence of plaintiff's fellow servants, Tarbutton and Wegmann, he would not be entitled to a recovery.

There was evidence from which the jury might reasonably have believed that Krause's injuries were caused by negligence on the part of Tarbutton and Wegmann, fellow servants of the plaintiff. Moeller, a witness called by the plaintiff, in cross-examination testified, "If they (meaning Tarbutton and Wegmann) had pushed it would not have done any hard damage;" and in

response to the question, "It wouldn't have fallen on them if they had pushed it?" he replied, "No, sir." Other witnesses testified as to the moment when Tarbutton and Wegmann ceased to push on the condenser and withdrew their support from it.

We believe there was sufficient evidence bearing upon the acts and conduct of Tarbutton and Wegmann, at the time of the accident, of such a character to have entitled the defendant below to a more specific charge under the tenth prayer.

For the reasons stated we are of the opinion that there is reversible error in the charge of the court below as specified by the eighth assignment of error and the court directs that the judgment below be reversed and the case remanded to the court below for a re-trial.

[3] Inasmuch as the case is remanded for a new trial we announce the following as our views on the part of the charge wherein, with reference to the status of Moeller, the court said:

"We cannot charge the jury that they should find that Henry P. Moeller was either a fellow servant of the plaintiff, or the agent of the master in directing and performing the work of moving the condenser," etc.

We are of the opinion that it appears as a matter of law from the evidence that Moeller, in directing and performing the work, was the agent, representative or substitute of Blouth, the master, as it is affirmatively shown, that Moeller who was ordered by the owner to move the condenser had full charge and control of the operating part of the brewery with the exception of the office, that he was vested with the entire management, control and supervision of moving the condenser, that he had the power and authority to direct the men under him, and that he was personally in charge of the work, assisting and directing how it should be done.

Judgment below reversed.