Antonio Di Nardi, Administrator of Alexander Di Nardi, deceased, *vs.* The Standard Lime and Stone Company, a corporation of the State of West Virginia.

1. Master and Servant—Death of Employee—Negligence—Sufficiency of Evidence.

In an action for the death of an employee from being smothered while working in a stonedust bin, evidence *held* not to show that the death was due to any act or negligence of the employer.

2. Witnesses—Competency—Transaction with Deceased.

In an administrator's action for the death of an employee from being smothered in a stone-dust bin, the plaintiff was not incompetent, under 16 *Del. Laws, c. 537 (Rev. Code* 1852, amended to 1893, *p.* 798) § 1, providing that in actions by administrators they cannot testify "as to any transaction with or statement by" the intestate, to testify that at the time of the accident he was working at the crusher where it occurred, and whether he saw deceased anywhere around the bin.

3. Witnesses—Competency—Transaction with Deceased.

In an administrator's action for the death of an employee from being smothered in a stone-dust bin, the plaintiff was incompetent, under 16 *Del. Laws, c. 537 (Rev. Code* 1852, amended to 1893, *p.* 798) § 1, to testify what duties the deceased was employed to perform at the time of the accident; it being evidence as to a transaction between deceased and defendant.

(*May* 29, 1912.)

Judges Woolley and Rice sitting.
*Andrew C. Gray* for plaintiff.
*William S. Hilles* and *Robert Penington* for defendant.
Superior Court, New Castle County, May Term, 1912.
Foreign Attachment.

Action by Administrator for Damages (No. 97, January Term, 1909) for death of plaintiff's intestate, alleged to have been occasioned through the negligence of the defendant company.

It was not disputed that death of the plaintiff's intestate occurred on December 6, 1907, in a stone-dust bin at the quarry of the defendant company at Wooddale, and was caused by withdrawing stone-dust from the bottom of the bin while the decedent was above, whereby he was drawn below the surface of the stone-dust and smothered.

The plaintiff contended and sought to prove that the accident occurred by reason of stone-dust being left in the bin over night,

24

upon which snow fell and which resulted in its freezing and form-
ing a crust of stone-dust about four inches thick over the entire
surface of the bin, and that when the fresh dust was deposited
upon the frozen crust on the morning of the accident, and the
plaintiff's intestate, in the performance of his duty, got into the
bin when nearly full, to level off the stone-dust being deposited
therein from a pipe connected with the stone crusher, and the
door being opened in the bottom of the bin by another employee
to load a car, produced a hole beneath the crust without notice
to the plaintiff's intestate, which caused the crust to break through,
carrying the plaintiff's intestate down into the dust and causing
his death, and the plaintiff further contended that the negligence
of the defendant company consisted in not sending some one into
the bin before any further stone-dust was deposited upon the
frozen crust, to break and pulverize the same, so that when the
plaintiff's intestate entered the bin to level off the stone-dust, he
would have notice when the slide in the bottom of the bin was
slightly opened, as was customary, that the loading of the car was
about to begin and would thus protect himself by getting out of
the bin.

At the trial it was admitted that Antonio Di Nardi, the
plaintiff, was the father and administrator of Alexander Di Nardi,
deceased.    Letters of administration to plaintiff were admitted
in evidence.    The plaintiff was thereupon produced and asked
by Mr. Gray the following question: "Were you working at the
crusher of The Standard Lime and Stone Company on the sixth
day of December, 1907, (the day of the alleged accident in which
the plaintiff's intestate met his death)?"

Mr. Hilles objected on the ground that the question sought
to elicit from the plaintiff administrator testimony of a transac-
tion of the deceased with the defendant company, which was con-
trary to *Section* 1, *Chapter* 537, *Volume* 16, *Laws of Delaware*
(*Revised Code* (1893) *p*. 798), providing "that in actions or proceed-
ings by or against, executors, administrators or guardians in which
judgment or decree may be rendered for or against them, neither
party shall be allowed to testify against the other as to any trans-
action with or statement by the testator, intestate or ward unless

called to testify thereto by the opposite party;" that the statute from which this language is taken is the statute that removed from parties and persons interested in actions their common-law disqualification as witnesses, but left that disqualification remain as to executors, administrators and guardians under the circumstances stated, and that, as a consequence this plaintiff administrator in this case should not be allowed to testify (*Ethridge v. Bennett's Ex.*, 9 *Houst.* 295).

WOOLLEY, J.:—We understand, Mr. Hilles, that your objection to the question extends to the disqualification of the witness to testify, not only with respect to matters that relate to transactions with or statements by the decedent, but to any other matter?

*Mr. Hilles*:—Yes, sir.

*Mr. Gray*, for plaintiff, contended that the statute in referring to executors and administrators stipulated that they should not testify as to statements by or transactions with the deceased, but that that was the limit of their disqualification as witnesses; that certainly an administrator has as full a right as his decedent would have had, if living, to testify to what he observed and what facts and circumstances he saw as to the surroundings of the accident; not as to any statements by, or transactions of the deceased with the defendant company, but as to the facts causing the accident, which were within the observation of the administrator.

WOOLLEY, J.:—The court understands that the objection to the question is an objection to the competency of the witness rather than to the admissibility of the particular testimony, and that the ground of the objection is, that because of his position of administrator, the plaintiff is disqualified by the statute to testify not only concerning transactions with and statements by the deceased, but to testify at all concerning any act, condition, situation or circumstance that bears upon, grows out of or has a relation to the matter in dispute, even when such a matter comprehends something more than the immediate relation of the two parties.

The obvious purpose of the statute that provides that neither the surviving party nor the personal representative of a deceased

party to a transaction which after death becomes the subject of litigation, shall testify against the other, is to prevent the injustice that would naturally arise from the situation caused by death, in which, were the rule otherwise, the decedent could neither reply to the testimony of his adversary, nor in turn be cross-examined by his adversary with respect to his *ante mortem* statements.

The reference of the statute to a "transaction" contemplates an intercourse, a relation or an *action between* parties, and it is with reference only to such a "transaction with" or a "statement by" the deceased, that the statute disqualifies the administrator as a witness. The statute in fact and effect is a qualifying statute, and it qualifies persons to testify who theretofore were disqualified because of interest. The only limitation to the scope of the relief from the disability of interest afforded by the statute, is that which relates to testimony "as to any transaction with or statement by" the deceased. As this exception relates only to testimony upon such subjects, it is apparent that an administrator, who by express provision is disqualified to testify in relation to this, is not disqualified, in the absence of any other limitation, to testify upon other subjects not connected with those inhibited. The court is therefore of the opinion that the plaintiff administrator is not disqualified as a witness in this case and considered with respect to the statute in question, his testimony is admissible or inadmissible as it avoids or concerns transactions with or statements made by the decedent.

The plaintiff then proceeded to testify that he had worked at the stone crusher of the defendant company for about three years before the accident to his son; that there were eleven bins into which stone-dust was conducted through pipes from the crusher; that these bins were elevated so that cars could run underneath them, which cars were loaded by opening an iron door or slide in the bottom of the bins, thus emptying the contents of the bins into the cars; that the duty of the witness at the dust bin that morning was to pull the cover from the bottom of the bin and fill the car with the stone-dust, which was done by pulling down the door so that the dust would fall into the car and fill it. That just before the accident he opened the door in the bottom of the dust

bin and started to fill the car, and while doing so he heard somebody hollow, that he then shut the door and went up to the top of the bin, and saw no one in the bin. The night preceding the accident was very cold, and snow was mixed with the dust.

The plaintiff further testified that after looking in the bin he returned and opened the door again to fill up the car but there was no dust coming down through the door; that he then got hold of the iron pipe and went on top of the bin again and saw that the stone-dust was frozen and was in lumps of about four inches in thickness, and he went to work with the pipe and tried to make the stone-dust start again; that the frozen stone-dust was all broken up. On the north side the dust was standing up in a big bunch and on the south side was a big hole, that he did not examine the hole at the bottom of the bin after that. The plaintiff was then asked by his counsel the following question: "Q. Did you see Alexander Di Nardi, the deceased, anywhere around the bin?"

(Objected to by Mr. Hilles, of counsel for defendant, under the statute as a transaction with the deceased.)

WOOLLEY, J.:—The court appreciate that in an action *ex delicto*, where the cause of action is based upon an act of negligence, charged to the defendant, rather than upon a transaction or intercourse with the defendant, there must somewhere be a line dividing the testimony which, under the statute, the plaintiff may give in his personal capacity and which he may not give in his representative capacity. Testimony by the plaintiff that the deceased was about the bin on the morning of the accident is testimony of a physical fact of which the plaintiff learned not from any transaction or relation which the deceased may have had with the defendant nor from any statement made by the deceased to him, nor because of anything in his official capacity as the personal representative of the deceased, but simply from his own personal observation, concerning which the opportunity of the defendant of cross-examination is not limited or affected by the death of the intestate. To such a fact the plaintiff is not disqualified by the statute to testify.

RICE, J.:—This statute provides "that in actions or proceedings by or against, executors, administrators or guardians in

which judgment or decree may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator," etc.   It appears to me that this refers to any transaction between either party and the intestate or any statement by the intestate, and not as to personal observations of either party in the action.

The plaintiff testified to the discovery of the deceased in the bin and to his death.

It was then proved by the plaintiff without objection, that his deceased son had been working in and about the crusher since April first of the year of the accident, but he had worked in the quarry about two years before that time.

The plaintiff was then asked by his counsel, the following question: "Do you know the duties that Alexander Di Nardi was employed to perform at the time of the accident?   A. Yes, sir. Q. What were those duties he performed?"

(Mr. Hilles, counsel for defendant objected to the question, and pending the decision of the court, cross-examined the witness upon his knowledge as follows:)   "X. How did you find out what your son's duties were at the time of this accident in December, 1907?   A. Everybody has his job and everybody knows what he has got to do.   Then everybody knows what that work is. X. Do you mean that everybody knows what every other man's duties are?   A. What I am talking about is around the crusher. There are three or four men there together and they know what is going on there."

(Mr. Hilles renews his objection to the question asked by plaintiff's counsel.)

WOOLLEY, J.:—It appears to the court that the examination of decedent's administrator has now reached the point at which the statute interferes.   Obviously an answer to the question will suggest that the relation of master and servant existed between the defendant and the deceased.   Such a relation is a contractual one, and though this be an action of tort arising out of that relation, the relation itself, must have been a transaction between the defendant and this deceased, "as to" or concerning which the

Nonsuit—Verdict.

administrator of the deceased, is by the express exception of the statute, disqualified to testify.  The objection is sustained.

After producing further testimony along the line above indicated, the plaintiff rested and counsel for defendant moved for a nonsuit on the grounds, that there had been no evidence produced that a crust was formed in the bin, as alleged in every count of the declaration; that there was no evidence to show how the plaintiff's intestate got in the bin previous to the accident or at the time of the accident; that it was apparent from the testimony that before the father of the deceased boy opened the chute to let the dust run out the boy was shoveling the dust in the bin ten minutes before the accident; that there was no evidence that the boy did not fall into the bin; and that beyond proof that the decedent met his death by being smothered in a dust bin, there was nothing to show that he met his death by any act or neglect of the defendant.

*Gray*, for plaintiff, contended that the evidence adduced was sufficient to take the case to the jury and put the other side upon its defense.

WOOLLEY, J.:—The court has considered this case from several of its aspects and we are constrained to grant the motion for a nonsuit.

(The nonsuit being refused by counsel for plaintiff, the jury under peremptory instructions from the court, rendered a verdict for the defendant.)