**Patricia Ann GRANT, Petitioner,**

v.

**Bill F. GRIFFIN, Jr., Administrator of the Estate of Wilbert Edward Suggs, Respondent.**

No. A–10489.

Supreme Court of Texas.

April 21, 1965.

Rehearing Denied May 26, 1965.

Fairchild & Hunt, Center, R. E. McDaniel, Winnie, for petitioner.

Garrison, Renfrow, Zeleskey, Cornelius & Rogers and Forrest G. Braselton, Lufkin, for respondent.

CALVERT, Chief Justice.

Patricia Ann Grant was riding in an automobile being operated by a long-time acquaintance, Wilbert Edward Suggs, when the automobile left the highway and presumably ran against a tree. Suggs was killed in the accident and Miss Grant was seriously injured. Miss Grant sued Bill F. Griffin, administrator of the estate of Suggs, for damages sustained as a result of her injuries. The trial court withdrew the case from the jury at the conclusion of the plaintiff's testimony and rendered judgment for the defendant. The Court of Civil Appeals affirmed. 383 S.W.2d 643. We affirm.

The problem to be considered is whether an occupant of an automobile involved in a one-car accident, suing the administrator of the estate of the deceased operator for damages resulting from injuries sustained in the accident, is prohibited by Article 3716, Vernon's Texas Civil Statutes, the Dead Man's Statute, from testifying to the conduct of the deceased and to what was said and done by each of them in the context of events preceding and accompanying the accident.

Before the actual trial began, defendant filed a motion requesting that counsel for plaintiff be instructed to refrain from questioning the plaintiff concerning matters about which plaintiff was not permitted to testify by Art. 3716, and that plaintiff be instructed to refrain from giving testimony concerning such matters. The motion was granted and the instructions were given in some detail. The substance of each specific instruction is not material to our review. It is sufficient to state that by the instructions counsel for the plaintiff was instructed in detail not to question plaintiff, and plaintiff was similarly instructed not to testify,

concerning her observations of the defendant's conduct and condition, her conversations with the defendant and statements by him, and the conduct of the plaintiff preceding the accident.

After a jury was impaneled to try the case, Miss Grant was called as the first witness. She testified, without objection, to her place of residence, education and past employment; that she had been having dates with Suggs for about four and one-half years; and that she was riding in a Falcon pickup operated by Suggs when she was involved in an automobile accident on the highway between Timpson and Tenaha on June 16, 1963, around 6:30 p. m. She was then asked: "And how did the accident occur?" At this point counsel for the administrator objected on the ground that questions and answers concerning the accident had been prohibited by the order sustaining the motion in limine. The court sustained the objection. Thereupon the jury was retired, and the testimony of Miss Grant was taken for the purpose of perfecting her bill of exception. The testimony was re-offered after the jury was returned to the courtroom, but was excluded by the court. Miss Grant was then permitted to testify fully concerning the nature and extent of her injuries and to her hospitalization and medical treatment. It was stipulated that at the time of trial she had incurred necessary and reasonable medical expenses in the sum of $2,681.56.

■ The plaintiff offered no other evidence tending to explain the accident or its cause, or showing the surrounding circumstances. Indeed, she testified that she knew of no other witness to the accident and of no other person who could testify concerning the accident or to events leading up to it. It was at this point that the court withdrew the case from the jury and rendered judgment for the defendant. The Court of Civil Appeals concluded that all of the excluded testimony related to a transaction with the deceased and was inadmissible. We agree with the conclusion. For a better under-standing of our conclusion we will summarize the excluded testimony.

Suggs arrived at the plaintiff's home in a Falcon pickup around noon and took her to Center, about nine miles distant, for lunch. After lunch they drove around town for awhile and then started back to her home, but it was raining and the car "got stuck" at a place where the highway was under construction. They spent thirty to forty-five minutes getting the car "unstuck," and then proceeded to her home where they arrived at about 4 o'clock p. m., and where she changed clothes. They then drove to the home of Jerry and Lanell Beckham and visited for about an hour. They left the Beckham home and proceeded toward Timpson. When they left the Beckham home, Suggs did not "appear to be under the influence of alcoholic beverage," did not "walk with a stagger or wobble," his speech did not "slur," and he gave no signs that the plaintiff could notice "that he had been drinking alcoholic beverage." When they had been on the road for about twenty minutes, Suggs reached under the car seat and pulled out a six-pack of beer, and began opening the bottles and drinking the beer. As they drove around the city limits of Timpson, Suggs "got to driving reckless" and "got to cussing," and "he got madder as he started on towards Tenaha." During this period of time, "he was drinking beer."

There was a caution light on the highway between Timpson and Tenaha where they passed the Timpson school. At that point "you had to slow down." With respect to events transpiring at that point of their travel, she testified: "I told him to quit drinking and he was going to get in trouble and he was driving too fast and I told him to just let me out there and I would go up to the Dairy Queen and call mother and them or I would get out and get with some of the rest of my friends at the Dairy Queen and he slowed down." When Suggs slowed down, the plaintiff thought he was going to let her out. He pulled off the side of the road and she opened the car door

intending to get out, but the car was going too fast. Suggs speeded up and told her "to shut the door and get back in the car." Suggs pulled back on the road and continued to drink beer.

The plaintiff testified further: "I insisted he let me out. Told him to let me out if he was going to drive that way. The weather was too bad and he was drinking and if he was going to be mad like that and drive and drink, let me out of the car." It was raining "pretty heavy" and the highway was "rather narrow." Asked if she had "an occasion to observe the speedometer of the automobile Eddie Suggs was driving," she replied: "He was making around 80 I imagine." Asked again: "Do you know approximately how fast he was going when he went off the road?" she replied, "We were going fast. I don't know how fast." She testified that his speed was "approximately the same" when they went off the road "as it was prior back there on the road." The last thing she remembered was "Eddie reaching up under the seat," the car "going off side of the road" and "a bunch of trees." Questioned about how many times she asked to get out of the car, she answered: "I don't know. In different ways I asked him a dozen times directly to let me out. I said let me out when we was up town, at the Dairy Queen and I told him to stop and let me out. I told him different ways a dozen or so times, I imagine, at different times, to let me out." She testified she never had any chance to get out of the car, and that from the time Suggs got the beer out from under the car seat he appeared "to become intoxicated." She said: "I had seen him drink beer before and he hadn't gotten like that. I don't know. He seemed either sleepy or drunker than usual or something is the reason he was driving so reckless. I don't know why. * * *"

The pertinent part of Art. 3716 provides: "In actions * * * against * * * administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the * * * intestate * * * unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the * * * legal representatives of a decedent arising out of any transaction with such decedent."

■ The disqualification of witnesses imposed by the Dead Man's Statute has been roundly criticized in many quarters. Wigmore criticized the policy of the statute as early as 1899 in his revision of Greenleaf on Evidence. He referred to it as "deplorable in every respect" because "it is based on a fallacious and exploded principle" which "leads to as much or more false decision than it prevents" and "encumbers the profession with a profuse mass of barren quibbles over the interpretation of mere words." 1 Greenleaf on Evidence, 16th Ed., 493. In commenting on the statute, McCormick and Ray state: "It is the generally accepted view of all legal writers that exclusion on the basis of interest, regardless of what kind, is both theoretically and practically unsound." 1 Texas Law of Evidence, 2nd Ed., 306. Maurice Cheek, a member of the Texas Bar, writing as long ago as 1926, characterized the disqualification as "archaic and unjust" and urged that the statute "be abolished altogether." 5 Texas Law Review 149, 173. District Judge A. R. Stout stated in an excellent comment that "the dead man's statute is full of snares, traps, and pitfalls, and that we have a rule by a wilderness of uncertain cases as well as a rule by an uncertain statute." 38 Texas Law Review 14, 23. These criticisms may well be justified; and no doubt the injustice which the statute has wrought has prompted our adoption of a liberal policy of admitting testimony whenever a reasonable construction or application of the statute will permit. See Harper v. Johnson, 162 Tex. 117, 345 S.W.2d 277 (1961); Ragsdale v. Ragsdale, 142 Tex. 476, 179 S.W.2d 291 (1944). But to interpret the statute liberally is far different from nulli-

fying or repealing it. The statute is not court-made law. It was enacted by the Legislature acting well within the boundaries of legislative power, and challenges to the wisdom of legislative action must be addressed to the Legislature and not to the courts. Our only concern here is whether under the provisions of Art. 3716 the testimony of Miss Grant was properly excluded by the trial court.

There is no case decided by this Court directly in point, and we are, therefore, unhampered by the rule of stare decisis. The cause of action asserted in Harper v. Johnson, supra, grew out of a two-car collision, and we held that the surviving operator of one of the vehicles was not prohibited by the statute from testifying in his suit against the administrator of the estate of the deceased operator of the other vehicle to facts establishing fault, including testimony as to his observations and his description of the physical situation and the movement of the vehicles prior to and at the time of the collision. In the course of our opinion we referred to a dictionary definition of the word "transaction," but the definition did not control our decision. On the contrary, our decision was ruled by our conclusion that the "impersonal, fortuitous and involuntary relationship" between the parties should not be construed as a "transaction" within the meaning of the statute. A few cases in point from other state jurisdictions, reaching varying results, are noted in 80 A.L.R.2d 1306–1310.

We return to the instant case. Miss Grant was undoubtedly engaged in a transaction with Suggs when she agreed to ride with him in the automobile. No words evidencing a formal contract between them were necessary to the creation of a consensual relationship. The relationship of the parties was not "impersonal, fortuitous and involuntary"; it was personal, deliberate and voluntary, created by mutual consent. The evidence establishes that Miss Grant entered the automobile as a guest of Suggs, and the respective rights and duties of the parties in the event of an accident resulting in injury to Miss Grant were governed by Article 6701b, Vernon's Texas Civil Statutes, the Guest Statute. The statute was a part of the agreement under which the parties embarked on the disastrous automobile trip. They agreed that Miss Grant would have no right of action against Suggs or the administrator of his estate for injuries incurred in an accident while she was riding as his guest unless they were caused intentionally or by conduct on his part which was heedless and in reckless disregard of the rights of others. In the context of this relationship, any right of action for accidental injuries sustained by Miss Grant as a guest *grew out of a transaction* with the deceased; it grew out of a relationship established by mutual agreement by which the duty of Suggs to Miss Grant was established and delineated. Testimony of Miss Grant that the highway was narrow and that the rain was heavy may have been admissible, but her testimony tending to establish gross negligence on the part of Suggs—driving in the heavy rain and on the narrow highway at 80 miles per hour while in an intoxicated condition—related to a transaction with the deceased and was properly excluded.

A part of the excluded testimony of Miss Grant would, under decisions of courts of some of the other states, have established a duty on the part of Suggs not to injure her through simple negligence. The testimony is that which relates Miss Grant's efforts to leave the automobile during the trip and Suggs' refusal to permit her to leave.[1] Some of this testimony was properly excluded because it related to a *statement* by the deceased, and the remainder

---

1. Some courts have held that when a guest is restrained from leaving a vehicle, the operator is no longer protected against simple negligence by the Guest Statute. See 25 A.L.R.2d 1448; Andrews v. Kirk, Fla., 106 So 2d 110 (1958); Blanchard v. Ogletree, 41 Ga.App. 4, 152 S.E. 116. Contra: Akins v. Hemphill, 33 Wash.2d 735, 207 P.2d 195 (1949). We do not decide this question.

was properly excluded because it related to *a transaction* with the deceased—a transaction by which the relationship of the parties may have been changed and their rights and duties may have been altered.

Eliminating the testimony of Miss Grant which we have held was properly excluded, there remained no testimony establishing a breach of any duty owed by Suggs to Miss Grant. The trial court did not err, therefore, in withdrawing the case from the jury and in rendering judgment for the defendant, and the Court of Civil Appeals did not err in affirming that judgment.

The judgment of the Court of Civil Appeals is affirmed.

SMITH, Justice (dissenting).

I respectfully dissent. The effect of this decision is to deprive Patricia Ann Grant of her cause of action for damages resulting from injuries sustained in a one-car accident. The car was being driven by Edward Suggs. Suggs was killed in the accident. Patricia Ann Grant is the only known witness to the accident and the only person in a position to testify to the pleaded facts which, if found by the trier of the facts to constitute gross negligence and a proximate cause of the accident and resulting injuries, would support a judgment in her favor. The trial court sustained a motion in limine, thereby prohibiting Patricia Ann Grant's testimony. Not only that, the trial court withdrew the case from the jury and rendered judgment for the defendant. This action of the trial court was prompted solely by the contention that the provisions of Article 3716, the "Dead Man's Statute," had effectively killed Patricia Ann Grant's cause of action. This Court now holds, in effect, that in a guest statute case where a plaintiff seeks through her testimony alone to present her cause to a jury, she must bow to a statute which has been classified as being one "deplorable in every respect" ; that she must forego her constitutional right to a fair and impartial trial before a jury

of her peers; that she must suffer the injuries inflicted upon her without an opportunity to test her credibility as a witness before a trier of the facts; that it is more important to protect the estates of the dead than the rights of the living; that it is presumed that Patricia Ann Grant would more likely swear to a falsehood than to the truth.

It is not my purpose here to advocate a repeal of the statute. Such is not necessary. The statute should have no application in a case such as this. This Court, as late as 1961, in the case of Harper v. Johnson, 162 Tex. 117, 345 S.W. 2d 277, declared that the statute should be strictly construed. There the Court was called upon to determine whether or not, under Article 3716, a surviving driver of an automobile-truck collision would be permitted to testify both as to his own actions and those of the decedent. In that case the collision was between *strangers*. This Court, in holding the testimony admissible, based its holding largely on the fact that two *strangers* driving motor vehicles approached and collided with each other. We held that the collision was not a "transaction" within the meaning of the statute. It is strange, indeed, to say that an incident becomes a "transaction" within the meaning of the statute merely because the survivor and the deceased were friends and riding in the same vehicle. The Court in Harper v. Johnson recognized an exception where the parties were strangers. We said:

> "With this situation in mind, we will give the greatest import to the fact that the Dead Man's Statute has the effect of limiting the evidence in a judicial hearing to something less than all the available evidence. Justice will not ordinarily prevail where only a part of the available evidence affords the only support for the judgment rendered."

In this case, the parties were friends rather than *strangers*. Patricia Ann Grant

was riding as a guest in the Suggs automobile, and for these two reasons a "transaction" has evolved, and instead of justice prevailing—justice has been shipwrecked. A stranger when he knocks at the door of justice is received, but the door is closed to a friend in a like situation. Justice has not prevailed because, under the holding of this court, there is no available evidence to support a judgment for Patricia Ann Grant. We said in Harper v. Johnson that:

> "To hold that the term 'transaction' includes such an event as an automobile collision is to disregard the customary, common and ordinary meaning of the word, and we believe that such a holding would be a judicial extension of this exclusionary rule far beyond what the Legislature intended."

It now develops that this exception was only meant for strangers. The present holding renders absolutely meaningless Article 3714, Vernon's Annotated Statutes, adopted in 1871, which provides: "No person shall be incompetent to testify on account of color, nor because he is a party to a suit or proceeding or interested in the issue tried." The Court has effectively restored the English Common Law rule which came into existence around the year 1500 and prevailed for over 400 years. That rule no longer prevails in England. Apparently when declared, it was thought that the best and surest method of securing the truth was to exclude certain classes of witnesses who were apt to swear falsely. It was thought that all persons who had a primary interest should fall within the class to be excluded from the privilege of giving testimony in court. In Harper v. Johnson, the testimony was given by parties who had a "primary interest" in the outcome of an action for damages as the result of an accident involving an automobile and a truck. We held the testimony was admissible. In the present case a person with a "primary interest" and one automobile are involved. We hold

that the survivor shall not testify. We hold on the one hand that in the light of "probable legislative intent" the statute was not intended to bar a *stranger* from testifying, but on the other hand it was probably the legislative intent to forever seal the lips of a *friend* of the deceased.

In the present case the trial court, with full knowledge that without the testimony of Patricia Ann Grant her case would surely fall, sustained an objection of counsel for the administrator of the Suggs estate based on the ground that the questions propounded to Patricia Ann Grant and her answers thereto as shown in a bill of exception concerning the accident, had been prohibited by the court's previous order sustaining the administrator's motion in limine. A concept of justice which excludes the right to present a perfectly good cause of action to the courts for determination should not prevail. The holding here is completely out of harmony with the Texas Constitution, Article I, Section 19, Vernon's Ann.St., which provides that: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." There must be read into every valid statute the rights given citizens under our Constitution. Failure to do so renders the statute void and it should be so declared. Rather than deprive one citizen of due process, it would be far better and justice would more likely prevail in all automobile collision cases if this Court would clearly hold that the statute does not apply. The testimony of either party, regardless of whether or not other testimony is available, should be admitted under the ruling of the Court. This Court in Harper v. Johnson went part way—now, in this case, in the interest of justice, we should go all the way, but leave the repeal of the statute to the Legislature. I reiterate that it is not necessary in this case to declare the statute void. This Court can just as logically declare that the factual situation here presented is no more a "business

deal," or "acts involving buying and selling," or "transactions on the exchange" between the parties involved in the one-car collision than it was in Harper v. Johnson, wherein strangers and two motor vehicles were involved.

I would reverse the judgments of both the trial court and the Court of Civil Appeals, and remand the cause to the trial court for a new trial.