HOBSON, Chief Judge.
This case arose out of a tragic accident which occurred on Interstate 95 in Robeson County, North Carolina, on January 16, 1965. The automobile hit a bridge abutment while traveling at a high rate of speed. It is undisputed that whoever was driving was negligent, and there is no issue of contributory negligence.
The automobile was occupied by Margarita Messinger, Bruce Messinger (her son), Nylah T. Bell and Sandra Bell (her daughter). Everyone but Bruce Messinger was killed in the accident.
Appellee Bruce Messinger claimed damages for personal injuries, and the executors of the estate of Margarita Messinger, also appellees, claimed damages for her wrongful death. Both complaints were filed in the Circuit Court for Hillsborough County against the appellant, executrix of the estate of Nylah T. Bell, charging the deceased wtih negligent operation of a motor vehicle. Appellant specifically denied that Nylah T. Bell was driving the automobile at the time of the accident, and counterclaimed against each of the appellees for the wrongful death of Nylah T. Bell.
The cases were consolidated and tried by a jury. A verdict of $15,000 was returned for appellee Bruce Messinger and $90,000 for the estate of Margarita Messinger. Appellant has appealed from the final judgments in favor of the appellees.
The only liability issue is who was driving the automobile at the time of the accident, and this is relevant to both the claims of Bruce Messinger and the estate of Margarita Messinger. Appellant alleges that the lower court erred by allowing Bruce Messinger to testify over objection that Nylah T. Bell took over the driving duties from him sometime before the accident, and that he thereafter went to sleep and remained asleep until the time of the accident. Appellant relies upon the Florida Dead Man’s Statute, Fla.Stat.1967, § 90.05, F.S.A., for the proposition that testimony by Bruce Messinger as to Nylah T. Bell’s taking over the driving duties was inadmissible and should have been excluded by the lower court. The statute provides, in pertinent part:
“[N]o party to such action or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party, *335 or interested person, derives any interest or title, by assignment or otherwise, shall be examined as a witness in regard to any transaction or communication between such witness and a person at the time of such examination deceased, insane or lunatic, against the executor, or administrator, * * *.” (emphasis added)
It is clear that Bruce Messinger was a party in one of the actions and was interested in the other action as a beneficiary of Margarita Messinger’s estate. It is also clear that the testimony was used against the executor of a deceased person — the appellant. Thus, the question for us to decide is whether Nylah T. Bell’s taking over the driving constituted a transaction with Bruce Messinger, as contemplated by the statute. We hold that it does not constitute a transaction.
This case presents a question of first impression in the courts of our State. The Florida courts have adopted the following definition of “transaction”:
“A ‘transaction’ between a witness and a decedent, within statutory provisions excluding evidence of such transactions, embraces every variety of affairs which can form the subject of negotiations, interviews, or actions between two persons, and includes every method by which one person can derive impressions or information from the conduct, condition, or language of another.” [Black’s Law Dictionary, p. 1688 (4th ed. 1957)]
See Embrey v. Southern Gas & Elec. Corp., Fla.1953, 63 So.2d 258, 263; Day v. Stickle, Fla.App.1959, 113 So.2d 559, 562.
The Supreme Court of Florida has held that an automobile accident, between two strangers, does not constitute a transaction so as to prohibit testimony of the surviving driver as to the circumstances surrounding the accident. Farley v. Collins, Fla.1962, 146 So.2d 366. This case is not on point, however, not only because it involved a collision between two vehicles operated by strangers, but also because it dealt with the question of whether the collision constituted a transaction. In the case sub judice, however, the question is not whether the collision was a transaction, but whether the taking over of driving duties by Nylah T. Bell before the collision constituted a transaction.
A much more relevant case is Herring v. Eiland, Fla.1955, 81 So.2d 645. There the court held that statements of the defendant driver relating to social activities with the incompetent plaintiff immediately preceding the journey on which the accident occurred, and relating to the manner in which he was operating his car at the time of the accident described independent facts, and did not refer to “transactions” with the incompetent person.
There is a split of authority on this subject in other jurisdictions (see Annot., 80 A.L.R.2d 1296, § 4 [1961]), and the cases cannot be convincingly reconciled. Appellant relies mainly upon two cases: Tharpe v. Newman, 1962, 257 N.C. 71, 125 S.E.2d 315; and Grant v. Griffin, Tex.1965, 390 S.W.2d 746. Although it is possible to distinguish these cases by careful reference to the challenged testimony of the witnesses, we choose instead to specifically reject their holdings as being neither within the spirit nor the letter of our Dead Man’s Statute. See the dissenting opinion of Justice Smith in Grant v. Griffin, supra.
The challenged testimony of Bruce Mes-singer merely identified Nylah T. Bell as the driver of the car when it departed the last stop of which he was aware. There was no testimony of any understanding or arrangement relative to the operation of the automobile either at that point or at any other time. Bruce Messinger testified only that Mrs. Bell was driving the car, and this appears to be the type of independent fact included within the rationale of Herring v. Eiland, supra. In addition, it has frequently been held that the exception that the Dead Man’s Statute makes in the modern rule allowing testimony of interested wit *336 nesses should be narrowly construed. E. g., Farley v. Collins, Fla.1962, 146 So.2d 366, 368; Day v. Stickle, Fla.App.1959, 113 So.2d 559, 563.
For the aforementioned reasons, we hold that the lower court was correct in overruling appellant’s objection to the testimony of Bruce Messinger, on the grounds that such testimony did not refer to a transaction between the witness and the deceased, Nylah T. Bell, See, Stanley v. Hayes, 1964, 276 Ala. 532, 165 So.2d 84; Simmons v. Larry, 1964, 109 Ga.App. 424, 136 S.E.2d 502; Christofiel v. Johnson, 1956, 40 Tenn.App. 197, 290 S.W.2d 215; Krantz v. Krantz, 1933, 211 Wis. 249, 248 N.W. 155, 157.
Appellant raises nine other points on appeal, all of which refer only to the damages awarded to the estate of Margarita Messinger. Appellant alleges that the lower court erroneously' allowed testimony and instructed the jury so as to allow them to consider amounts of cash dividends from securities which Margarita Messinger had been receiving as alimony and child support. Because the accident occurred in North Carolina, the substantive law of that state is applicable to this case. Messinger v. Tom, Fla.App.1967, 203 So.2d 357. A provision of the North Carolina Wrongful Death Statute, N.C.Gen.Stat. 1949, § 28-174, provides for the damages recoverable in a wrongful death action as follows:
“The plaintiff in said action may recover such damages as are a fair and just compensation for the pecuniary injury resulting from such death.”
This statute has been interpreted to allow damages for the loss to the estate of the decedent,[1] measured by “the present worth of the net pecuniary value of the life of the deceased.” [2] This simply means the present value of the projected income of the decedent, less his living expenses. Although there are inconsistencies in the decisions,[3] and appellant earnestly relies upon cases for the proposition that the projected income to be considered by the jury must be only that derived from the deceased’s “own exertions,”[4] we are of the opinion that the case at bar is governed by the rationale of Bryant v. Woodlief, 1960, 252 N.C. 488, 114 S.E.2d 241.[5] In that case the Supreme Court of North Carolina held that evidence of decedent’s railroad retirement pension was admissible on the issue of damages in a wrongful death action. Even though the court stated that the pension was merely remuneration for past work,[6] its language when it said,[7]
“[W]e do not understand that the general rule in this respect would exclude the inclusion of income from an annuity, life estate, retirement pay or other income for life only, in arriving at the pecuniary loss sustained by reason of wrongful death.”
was sufficiently broad to encompass the evidence of the alimony and support which was admitted in the case sub judice.[8] The *337 court went on to point out that the requirement that the income of the decedent be derived from his own exertions has evolved to avoid the inclusion of investment or business income, derived from things owned by the decedent, because those things would not be lost to the estate.[9]
The securities, the income from which constituted the alimony and support which Mrs. Messinger received, were held in trust, but ownership remained in her former husband. For this reason we agree with the lower court’s statement on the matter:
“Normally a person deriving such income would be the owner of the stock and the stock itself would become an asset of his or her estate at death. Under such circumstances there would be no pecuniary loss to the estate by reason of death because the estate would own the stock and continue to derive the income therefrom. However, in the case of Mrs. Messinger her death terminated this income just as surely as it would have terminated income from her personal exertions had she been a wage earner. Dollar for dollar, accumulations from this stock income would have enhanced her estate just as surely as an income from a job or from a pension. To refuse to consider such income in determining the pecuniary loss resulting from Mrs. Messinger’s death could not, in the opinion of this Court, be justified.”
After careful study of the other points raised by the appellant, we find them to be without merit. The judgments appealed are therefore
Affirmed.
LILES and McNULTY, JJ., concur.

. Mendenhall v. North Carolina R. R., 1898, 123 N.C. 275, 31 S.E. 480; Note, Wrongful Death Damages in North Carolina, 44 N.C.L.Rev. 402, 412, 413 (1966).

. Journigan v. Little River Ice Co., 1951, 233 N.C. 180, 184, 63 S.E.2d 183, 186.

. Note, supra note 1, at 429-432.

. Caudle v. Southern Ry. Co., 1955, 242 N.C. 466, 88 S.E.2d 138; Journigan v. Little River Ice Co., supra note 2; Hanks v. Norfolk & Western Ry. Co., 1949, 230 N.C. 179, 52 S.E.2d 717.

. See also, Comment, 39 N.C.L.Rev. 107 (1960) ; Annot, 81 A.L.R.2d 949 (1962).

. 114 S.E.2d at 248.

. 114 S.E.2d at 246.

. Notwithstanding the Court’s statement that, “It is not intended that this opinion shall alter, modify or overrule any of our previous opinions dealing with the measure of damages for wrongful death.” 114 S.E.2d at 248. Our conclusion is supported by two commentators on the Woodlief case:
*337 “* * ‡ The court did not indicate expressly or impliedly that these life incomes must be the result in any manner of the labor of the decedent. Since the defendant challenged the trial court on the admission in evidence of the pension, it would seem that if the court required the life income to have been gained through the exertions of the decedent, even indirectly, it would have stated as much. Apparently the North Carolina court will now allow the jury to consider any income for life only as a legitimate element of damage, even though obtained by the decedent as a gift or devise. The jury presumably can look at social security payments and even welfare benefits that the decedent had been receiving in fixing the damages.” Note, supra note 1, at 432.
“Indeed whether the income was derived from any exertion at all does not logically affect what the estate of the decedent has lost by his wrongful death because the loss of a life income in any form is a pecuniary loss which the estate of the decedent has suffered.” Comment, supra note 5, at 109.

. 114 S.E.2d at 247.