Jay H. CONNOR, Administrator of the Estate of Enoch C. Crisden and Peoples Settlement Association of Wilmington, Delaware, a Delaware corporation, Defendants Below, Appellants,

v.

Ralph E. LYNESS and Elsie B. Lyness, his wife, Plaintiffs Below, Appellees.

Supreme Court of Delaware.

Nov. 8, 1971.

Roger Sanders, of Prickett, Ward, Burt & Sanders, Wilmington, for defendants below, appellants.

H. James Conaway, Jr., and Sheldon A. Weinstein, of Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiffs below, appellees.

Before WOLCOTT, Chief Justice, and CAREY and HERRMANN, Justices.

HERRMANN, Justice:

The determinative question on this appeal is whether 10 Del.C. § 4302, the so-called Dead Man Statute,[1] is applicable in an automobile negligence case in which the plaintiff is the surviving driver of the two-vehicle accident and the other driver was deceased when the action was commenced against his executor. The question may be otherwise stated: is an automobile accident a "transaction" between two stranger-drivers within the meaning of that word as used in the Dead Man Statute? We think not.

I.

This automobile negligence action was brought by Ralph E. Lyness and Elsie B. Lyness, his wife, against Peoples Settlement Association of Wilmington, Delaware, a Delaware corporation (hereinafter "Peoples"), and the Administrator of the Estate of Enoch O. Crisden, an employee of Peoples. At the time of the accident out of which the action arose, Mrs. Lyness was driving alone in the plaintiffs' automobile and Crisden was driving alone in Peoples' bus when the two vehicles collided on a public street. The drivers were absolute strangers to each other.

Crisden died of unrelated causes several months after the accident and before this action was brought. At the jury trial, over objections based upon the Dead Man Stat-

---

1. 10 Del.C. § 4302 provides:
   "§ 4302. Competence of parties or interested witnesses to testify
   "No person shall be incompetent to testify in any civil action or proceeding whether at law or in equity, because he is a party to the record or interested in the event of the suit or matter to be determined. In actions or proceedings by or against executors, administrators or guardians in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any *transaction with or statement by* the testator, intestate or ward, unless called to testify thereto by the opposite party." (Emphasis supplied.)

ute, the Trial Judge permitted Mrs. Lyness to testify as to the facts of the accident up to the moment of impact. The Trial Judge refused to admit into evidence an unsworn, handwritten statement made by Crisden and delivered to Peoples' insurance adjuster shortly after the accident.

The jury's verdict was for the plaintiffs. Both defendants appeal.

## II.

The Dead Man Statute is basically a qualifying enactment, abolishing the common law disqualification of witnesses having an interest in the litigation, with the exception we deal with here which has given the Statute its name. Prior to the enactment of such statutes in the several states, it was the general rule that parties and others interested in the outcome of the litigation were incompetent as witnesses because of such interest. The purpose of the exception carved out of the qualifying enactment, which was allowed to perpetuate within a limited scope the principle of the discarded rule, was said to be the prevention of the "injustice that would naturally arise from the situation caused by death, in which, were the rule otherwise, the decedent could neither reply to the testimony of his adversary, nor in turn be cross-examined by his adversary with respect to his antemortem statements." DiNardi v. Standard Lime and Stone Co., 3 Boyce 369, 84 A. 124, 125 (1912).

The law is in disarray upon the question of the application of Dead Man Statutes in automobile accident cases. In some jurisdictions, the testimony of a surviving driver is deemed barred completely by the Statute, even as to his own acts; in other jurisdictions, he is allowed to testify as to his own

acts only; in others, he is permitted to testify as to the acts of the decedent; and in still other jurisdictions, the rule prevails that, as between stranger-drivers, an automobile accident is not a "transaction" within the meaning of the word as used in the Statute and that, therefore, the Statute does not apply and a surviving driver may testify as to the facts of the accident. It appears that if there is any common denominator in the rationale of the widely-divergent decisions upon this facet of the law, it is the relationship, if any, that may have existed between the parties at the time of the event. See Annotation: "Testimony to Facts of Automobile Accident as Testimony to a 'transaction' or 'communication' with a Deceased Person, within Dead Man Statute", 80 A.L.R.2d 1296–1313.

There are two general propositions in this area of the law, however, upon which the authorities are in general accord: First, because it bars otherwise competent testimony, the Dead Man Statute is productive of more harm than good and is inimical to the basic search for justice; that the rule "excluding a survivor's testimony seems to stand in the almost unique situation of being condemned by all of the modern writers on the law of evidence." Wright v. Wilson (3 Cir.) 154 F.2d 616, 620 (1946). Secondly, the Statute should be strictly construed, narrowly limited in its application, and not extended by interpretation beyond the literal and clear meaning of its explicit terms. 2 Wigmore on Evidence (3d Ed.) § 578, pp. 695–698; McCormick on Evidence, § 65, pp. 142–144; see cases collected at Annotation, 80 A.L.R.2d 1296; e. g., Germann v. Matriss, 55 N.J. 193, 260 A.2d 825, 837 (1970).[2] These concepts are in accord with

---

2. "As a matter of policy, this survival of a part of the now discarded interest-qualification is deplorable in every respect; for it is based on a fallacious and exploded principle, it leads to as much or more false decision than it prevents, and it encumbers the profession with a profuse mass of barren quibbles over the interpretation of mere words." 2 Wigmore on Evidence, p. 697.

"There are more honest claims defeated [as the result of such Dead Man Statutes] by destroying the evidence to prove such claim than there would be fictitious claims established if all such enactments were swept away, and all persons rendered competent witnesses." St. John v. Lofland, 5 N.D. 140, 64 N.W. 930, 931 (1895).

the modern, prevailing policy of the law that disqualification of witnesses is not to be favored, that all persons should be deemed competent to testify, and that relevance of proffered testimony is the critical measure of its admissibility.[3]

Accordingly, we test the question before us by a narrow and strict construction of the word "transaction" as it appears in our Statute; we resist any expansion of a literal application of the word; and we apply the term strictly to the factual situation before us. In so doing, we bear in mind that the Dead Man Statute, with its word "transaction", was enacted in this State in 1881 (16 Del.L.Ch. 537), long before the concept of an automobile accident could possibly have been within the realm of legislative intent in the usage of the word.

With these guidelines before us, we reach the following conclusion: when, as in the instant case, a surviving automobile driver offers to testify as to the facts of an accident, the other driver being deceased and unable to testify, and the two drivers were strangers and had no prior relationship one to the other, the Dead Man Statute is not a bar to the survivor's testimony. We reach this conclusion because, in our opinion, the word "transaction", in the context of the Act, means a personal transaction;[4] it requires a personal relationship based upon mutual, concerted, and reciprocal acts of the persons involved; it does not include a wholly impersonal, fortuitous, and involuntary course of action by strangers leading to a purely accidental occurrence.

The rule and rationale we here endorse prevail in Maryland [Shaneybrook v. Blizzard, 209 Md. 304, 121 A.2d 218 (1956)]; Arkansas [Rankin v. Morgan, 193 Ark. 751, 102 S.W.2d 552 (1937)]; North Dakota [Knoepfle v. Suko, 108 N.W.2d 456 (1961)]; Texas [Harper v. Johnson, 162 Tex. 117, 345 S.W.2d 277 (1961)]; and in New Jersey it has been approved in principle [Germann v. Matriss, 55 N.J. 193, 260 A.2d 825 (1970)]. See also Turbot v. Repp, 247 Iowa 69, 72 N.W.2d 565 (1955); Seligman v. Orth, 205 Wis. 199, 236 N.W. 115 (1931); McCarthy v. Woolston, 210 App.Div. 152, 205 N.Y.S. 507 (1924). The only case to the contrary that has come to our attention on similar facts is In re Mueller's Estate, 166 Neb. 376, 89 N.W. 2d 137 (1958). We find ourselves in agreement with the dissenters in that case, however, as a matter of policy and by reason of the present weight of authority in analogous cases.

The defendants rely mainly upon Kaufmann v. McKeown, Del.Supr., 193 A.2d 81 (1963). This Court there held that the word "transaction", as used in the Dead Man Statute, applies to matters *ex delictu* as well as *ex contractu*; that the Trial Court there did not abuse its discretion in barring the plaintiff-passenger from testifying "as to the physical facts offered by the plaintiff concerning what took place in the automobile", the defendant being the deceased driver-host in the one-automobile accident there involved.

3. Such modern policy has been codified by statute in some jurisdictions. E. g., in New Jersey, a Dead Man Statute similar to ours was replaced in 1960 by a statute requiring that any party who asserts a claim against a personal representative, supported by oral testimony of a "statement or act" of the decedent, "shall be required to establish the same by clear and convincing proof." N.J.S.A. 2A:812 (as amended L.1960, c. 52).
We recommend to our General Assembly a new legislative look at Delaware's version of this "ancient relic of the past." See 2 Wigmore on Evidence, § 578a.

4. We so hold notwithstanding the absence in our Statute of the word "personal" which is expressly included in many others. See In re Mueller's Estate, 166 Neb. 376, 89 N.W.2d 137, 144 (1958). We think the word "personal" is necessarily implied in the context. Compare Simmons v. Larry, 109 Ga. App. 424, 136 S.E.2d 502.

Our holding here is not deemed to be contrary to *McKeown* which we limit to its facts. Here, the question arises as between stranger-drivers with no prior relationship; there, the question arose in a guest passenger-host driver situation, there being that personal relationship upon which to base a finding of personal "transaction". We think, therefore, that the result in *McKeown* and the conclusion we reach here are compatible.

Delaware will not be alone in making that differentiation in the application of the Dead Man Statute. In at least one other jurisdiction, a similar distinction has been drawn between stranger-drivers and passenger-driver situations. In Harper v. Johnson, 162 Tex. 117, 345 S.W.2d 277 (1961), it was held, as we have held here, that the "impersonal, fortuitous and involuntary relationship" between the two drivers, strangers to each other, (i. e., the accident which culminated in the death of one of them) should not be construed to be a "transaction" within the meaning of the Dead Man Statute and should not operate to render the surviving driver incompetent to testify as to the facts of the accident. On the other hand, in Grant v. Griffin, Tex., 390 S.W.2d 746 (1965), as in *McKeown*, a guest passenger-host driver relationship was deemed personal, deliberate, voluntary, and sufficient to give rise to a "transaction" within the meaning of the Statute in an action by the passenger against the personal representative of the deceased driver for injuries resulting from a one-car accident. There, as in *McKeown*, a relationship established by mutual agreement was deemed to exist.

The other leading Delaware cases on the Dead Man Statute are Krause v. Emmons, Del.Super., 6 Boyce 104, 97 A. 238, aff'd 97 A. 246 (1916) and DiNardi v. Standard Lime and Stone Co., Del.Super., 3 Boyce 369, 84 A. 124 (1912). Each involved a master-servant relationship and the application of the Statute to a workman's injury or death situation growing out of that relationship. For the reasons stated, any broad treatment of the term "transaction" in the context of those early cases is deemed inapposite to the situation before us here.

It is held, therefore, that the Trial Court did not err in permitting the plaintiff to testify as to the facts of the accident.

### III.

Although the Trial Judge ruled that the plaintiff's testimony would be limited to the facts of the accident prior to the impact, she was permitted to testify as to certain post-impact details, including the movements, resting places, and damaged conditions of the two vehicles after the impact.

Such testimony is within the scope of our ruling that the surviving driver is not barred by the Statute from testifying as to the facts of the accident. We intend to include in this ruling all facts of the accident, those occurring after the impact as well as before. Accordingly, we find no error in the post-impact testimony as such.

We do not intend, however, to include in our ruling any statement made by the deceased driver at the time of the accident. No contemporaneous utterance or statement by Crisden was involved in the instant case. Our ruling herein is confined to the word "transaction" and does not relate to the word "statement" as used in the Statute.

### IV.

■ In passing, we note that there was error in considering the Statute at all applicable to the plaintiffs' action against the corporation defendant; this for the reason that by its express terms the Statute applies only in "actions or proceedings by or against executors, administrators or guardians in which judgment may be rendered for or against them." Since the action by the surviving driver and her husband against the corporate defendant did

not fall within the statutory category, the Statute could have no application. Nevertheless, only the plaintiffs have cause for complaint; and since they have not appealed and do not complain as to the improper application of the Statute to their action against Peoples, the error is merely noted here as a caveat.

## V.

■ The defendants contend that the Trial Court erred in refusing to admit into evidence the handwritten, unsworn statement signed by Crisden shortly after the accident and given by him to the adjuster for Peoples' insurance company. There is no merit in this contention. We concur in the ruling of inadmissibility under the hearsay rule. If such long-established rule is to be abandoned in order to counterbalance any unfairness arising from the Dead Man Statute, legislative action is required.[5]

## VI.

■ The defendants contend that the Trial Court erred in directing a verdict for the plaintiffs on the issue of contributory negligence. We concur with the Trial Court's conclusion that there was insufficient evidence to go to the jury upon that issue.

## VII.

■ The defendants contend that the Trial Court erred in an inadvertent remark implying, according to the defendants, agreement with the plaintiffs' statement of a certain fact and disagreement with a statement by defense counsel as to that fact. We find sufficient to rectify the inadvertence the Trial Court's admonition to the jury to disregard the remark.

## VIII.

■ We find no merit in the defendants' contention that the Trial Judge committed error is having a subpoena issued for a medical witness whom the defendants were contemplating calling, rather than permitting the defendants to arrange for the appearance of the witness informally without subpoena, on the ground that the doctor thereby became "hostile".

## IX.

■ Unmeritorious, too, is the contention of the defendants that the Trial Court erred in instructing the jury that they "are not to be concerned with the source of payment of any money you may award to the plaintiffs and against the defendants." The instruction went on: "The question of the defendants' resources and the nature of the defendants' work and activities are not relevant to any issue in this case." The references here were not necessarily to liability insurance; they seem just as reasonably related to the corporate defendant and the charitable nature of its public activities. Such instructions are generally hazardous and inadvisable in our opinion; but they did not constitute error here.

## X.

■ The defendants contend that the Trial Court erred in instructing the jury

---

5. In this connection, it is noteworthy that Connecticut's following statutory approach to the problem has had widespread approval:

"No person shall be disqualified as a witness in any action, suit or proceeding by reason of his interest in the event of the same as a party or otherwise.

"In actions, suits or proceedings by or against the representatives of deceased persons, including proceedings for the probate of wills, any statement of the deceased, whether oral or written, shall not be excluded as hearsay, provided that the trial judge shall first find as a fact that the statement was made by decedent, and that it was made in good faith and on decedent's personal knowledge." See 2 Wigmore on Evidence, § 578a, p. 700.

that "the plaintiffs, if you find for them, will be required to pay a substantial attorney's fee, as well as expenses incidental to the preparation of the case." The instruction was error because it may be construed as an invitation to the jury to grant an increased verdict to cover the plaintiffs' legal fees and expenses. Since such fees are not proper elements of damages, the instruction was improper. We are of the opinion, however, that the error was not sufficiently prejudicial as to constitute reversible error in this case.

## XI.

The defendants make several other points in their search for grounds of reversal:

The defendants contend that the Trial Court erred in refusing to permit the investigating police officer to testify as to what Mrs. Lyness had told him about her speed at the time of the impact.

The defendants contend that the Trial Court erred in permitting an automobile-body repairman to give opinion testimony as an expert, without prior qualification, as to the effect a flat tire would have upon the severity of damage to other parts of the vehicle.

The defendants also contend that the Trial Court erred in permitting the plaintiffs' medical witness to testify as to the effect of automobile accidents on other patients.

We have carefully considered these contentions. We find them insufficient, individually and collectively, to constitute reversible error.

\* \* \*

The judgment below is affirmed.